# STATE OF OREGON,
*Appellant,*

*v.*

# LAWRENCE CHARLES HATTERSLEY,
*Respondent.*

(Nos. 43036 and 44553, CA A20882)

641 P2d 634

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief was Brown, Burt, Swanson, Lathen & Alexander, Salem.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

## GILLETTE, P. J.

The state appeals from an order of the trial court suppressing evidence. The court ordered that a note, allegedly written by a co-conspirator, together with certain conversations between defendant and a witness were inadmissible until the state made a *prima facie* showing that there had been a conspiracy. The court further ruled that the evidence the state indicated it had available, aside from the note and the conversations, was not sufficient to make a showing of conspiracy. We reverse and remand.

The charges against defendant arose from an alleged conspiracy between defendant and Randy Nafus to wreck defendant's boat so that defendant could collect on the loss from his insurance company. Nafus and defendant were seen talking together in a bar on the evening of April 15, 1980. Nafus later went out to defendant's boat with a friend, Sherry Thompson. Nafus told Thompson that he was going to take the boat out. Thompson left about 11 p.m; witnesses saw the boat leave the dock between 11 p.m. and midnight. It was discovered, wrecked, the next day. Nafus did not return.

The next day Thompson found a note written by Nafus which stated that he was drunk and that he was going to sink defendant's boat for $2,000. Thompson contacted defendant and asked about the $2,000. They had several conversations, during the course of which defendant offered Thompson $10,000 if she would keep quiet.

Defendant made a pre-trial motion to suppress any evidence of the note written by Nafus until the state had made a *prima facie* showing of conspiracy. The motion was based on ORS 41.900(6), which provides, as an exception to the hearsay rule:

"[E]vidence may be given of the following facts:
"* * * * *
"(6) After proof of a conspiracy, the declaration or act of a conspirator against his co-conspirator, and relating to the conspiracy."

After discussion with counsel, the court ruled that evidence of the note was not admissible until a *prima facie* showing of conspiracy had been made. The court also ruled that,

where a conspiracy is involved, the only exception to the hearsay rule that is applicable is that contained in ORS 41.900(6).

The next day the parties began selecting a jury. As the *voir dire* proceeded, the defense indicated that it had no peremptory challenges; the state took one peremptory challenge and indicated that it wished to take additional challenges. Court then recessed for lunch. When it reconvened, the state asked for clarification of the court's previous ruling, seeking guidelines for what was to be allowed in opening statement.

Further discussion was had, during which the court ruled that evidence of all conversations between defendant and Thompson must be suppressed until there was an independent showing of conspiracy, because all of the contacts between defendant and Thompson were precipitated by Thompson's finding the note. The court apparently applied a "fruit of the poisonous tree" rationale in reaching this conclusion.

The state and the defense then stipulated to the evidence of conspiracy which would be produced by the state, aside from the note and the conversations. The court ruled that that evidence did not constitute a *prima facie* showing of conspiracy.[1] After the trial court's ruling, the state indicated that it would appeal and asked for a continuance. The continuance was denied and, when the state declined to proceed further, defendant moved for dismissal. The motion was granted as to all counts.[2]

■ ■    The first issue to be decided is whether the order from which the state appeals is an appealable order under

---

[1] The state indicated that the only other evidence it could offer was testimony that defendant and Nafus were seen drinking together and were talking about fishing. Later Thompson and Nafus went to defendant's boat and Nafus had the key to the engine compartment. He made some statement to Thompson that he was going to take the boat out. The state does not contend here that this was sufficient evidence of conspiracy under ORS 41.900(6).

[2] Defendant was charged with conspiracy to commit criminal mischief, solicitation of criminal mischief, attempted theft, bribing a witness and tampering with a witness. There was some discussion of proceeding on the bribery and tampering charges, but defendant refused to waive double jeopardy, and all counts were dismissed.

ORS 138.060.[3] Defendant contends that the order was not one made "prior to trial" and therefore is not appealable. There is no statutory definition of "trial" as it is used in ORS 138.060. Defendant points out that the parties had reported that they were ready to proceed and had participated in the *voir dire* of the jury to the point at which the state had made one peremptory challenge before the court made the order for which the state attempts to appeal here. He argues that the trial had begun and that the state's appeal is not timely.

The state contends, on the other hand, that in criminal cases the trial does not begin until the jury is empaneled and sworn, because that is when jeopardy attaches. *See* ORS 131.505(5)(b). Although the definition of when a trial begins may vary with the context in which the term is used, *see Pfleeger v. Swanson, et al,* 229 Or 254, 367 P2d 406 (1961); 75 Am Jur2d Trial, § 3 (1974), it seems clear that the reason for allowing the state to appeal certain orders made "prior to trial" is to allow appeals from those orders before jeopardy attaches and re-trial is barred. We conclude that the term "prior to trial," as it is used in ORS 138.060, means "before the point in the proceedings when jeopardy attaches." *See State v. Pfortmiller,* 53 Or App 394, 632 P2d 459, *rev den* 291 Or 893 (1981); *State v. Hoare,* 20 Or App 439, 532 P2d 240 (1975); *State v. Robinson,* 3 Or App 200, 473 P2d 152 (1970). The trial court's order in this case was entered before the jury was empaneled and sworn; the state's appeal from that order was therefore timely. The appeal being timely, the state's refusal to proceed after it had indicated its intention to appeal did not justify dismissal. *State v. Hoare, supra,* 20 Or App

---

[3] ORS 138.060 provides:

"The state may take an appeal from the circuit court or the district court to the Court of Appeals from:

"(1) An order made prior to trial dismissing or setting aside the accusatory instrument;

"(2) An order arresting the judgment;

"(3) An order made prior to trial suppressing evidence; or

"(4) An order made prior to trial for the return or restoration of things seized."

at 445-46; *see also, State v. Caruso,* 289 Or 315, 322 n 6, 613 P2d 752 (1980). This appeal is properly before us.

■    We now turn to the merits of the trial court's suppression of the evidence. Hearsay is the

"use in court of an assertion made out of court as testimony to the truth of the fact asserted." *State v. Kendrick,* 239 Or 512, 515, 398 P2d 471 (1965).

The state concedes that, if the note written by Nafua were admitted for the truth of the matter contained in it, it would be subject to the restriction of ORS 41.900(6) as the statement of a co-conspirator. However, ORS 41.900(2) allows admission of "[t]he declaration, act, or omission of a party as evidence against such party." In the conversations between defendant and Thompson, defendant made several statements which are evidence of a conspiracy between himself and Nafus. The state argues, and we agree, that the note written by Nafus is admissible, not for the truth of the contents of the note, *i.e.,* that Nafus had agreed to wreck defendant's boat, but as a foundation for the statements made by defendant in response to learning of the note from Thompson. The note is admissible to show that such a note was written and that it gave rise to Thompson's inquiry; however, defendant's statements in response to learning of the note are declarations of a party and are admissible against him generally.

Reversed and remanded for trial.