Argued and submitted September 10, affirmed December 17, 1985

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DAVID E. DYKAST,
*Petitioner on Review.*

(CC 8301-0185, 8301-0186, 8301-0187;
CA A30963, A30964, A30965; SC S31757)

712 P2d 79

James M. Brown, Salem, argued the cause for petitioner on review. With him on the petition for review were Harold S. Harding, and Enfield, Guimond & Brown, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition for review were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

PETERSON, C. J.

Jones, J., filed concurring opinion joined by Lent and Roberts, JJ.

## PETERSON, C. J.

The question is whether the defendant's rights to a speedy trial were violated where 560 days elapsed between his original arrest and the trial. We hold that the defendant's rights were not violated and affirm his conviction.

The chronology of events is:

| | |
|---|---|
| March 30, 1982 | The defendant was indicted on two charges of delivery of a controlled substance. ORS 475.992. |
| March 31, 1982 | The defendant was arrested. |
| April 1, 1982 | The defendant was released on bail. |
| April 6, 1982 | The defendant was charged with two more violations under ORS 475.992. |
| April 22, 1982 | Arraignment. |
| May 20, 1982 | The defendant filed a motion to suppress. |
| July 7, 1982 | The state moved to set for trial. |
| July 15, 1982 | The court sent a notice setting the case for trial on August 23, 1982. |
| August 2, 1982 | The state moved to postpone the trial due to absence of a witness. |
| August 23, 1982 | The state's motion to postpone was denied. The defendant moved for a dismissal, and the motion was granted. |
| January 25, 1983 | The defendant was again indicted for the same crimes.[1] |
| February 2, 1983 | The defendant voluntarily |

---

[1] Dismissal did not bar reindictment. See ORS 135.753(2).

appeared for arraignment and was released on his own recognizance.

February 11, 1983     The defendant moved to dismiss on the ground that he has been denied a speedy trial in violation of the Constitution of Oregon, Article I, section 10, and the United States Constitution, Amendment VI and Amendment XIV.[2]

March 10, 1983     Motion to dismiss denied. In a memorandum opinion, the trial judge stated:

"The background of the case is undisputed and I accept the historical facts of record as set out in defendant's memorandum on his motion to dismiss as being accurate. The defendant was indicted on March 30, 1982. A trial date was established on August 23, 1982. The State moved on two occasions for a continuance at that time and on August 23, 1982, the State's motion to continue was denied and both indictments were dismissed without prejudice. On January 25, 1983, the defendant was re-indicted.

"The defendant testified at the time of hearing regarding the inconveniences he has experienced, his inability to firmly establish a direction in life until the criminal charges have been concluded.

"* * * * *.

"I have reviewed this matter as requested by the defendant

---

[2] In the trial court and on appeal, the defendant did not cite or rely upon ORS 135.747 or ORS 135.750. They provide:

ORS 135.747

"If a defendant charged with a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

ORS 135.750

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for his appearance to answer the charge or action."

applying the speedy trial criteria as set out under the federal cases and the cases found in the State of Oregon.

"The question becomes whether a delay from March 30, 1983, [sic] to January 25, 1983, violates the defendant's rights and deprives him of speedy trial.

"The delay is the sole result of the conduct of the State. It results from the State's inability to provide a witness and thereafter from its inability to re-indict at an earlier date. I do not find that this delay was the result of any effort on the part of the State to deprive the defendant of a fair trial or as a strategic effort to give the State a more favorable position at trial.

"The court recognizes that any criminal defendant is adversely affected by a pending trial. This was certainly the case in Mr. Dykast's situation. I do not find that this is, however, sufficient basis to deprive the State of proceeding.

"Under these circumstances the court must next determine whether the defendant has been in some way prejudiced in his ability to defend himself. The Oregon Supreme Court in *State vs. Ivory* (278 Or 499) declared the defendant must only prove a reasonable possibility of prejudice. The State may argue this requirement has been altered by later cases and this may be correct. This is immaterial in this instance because the defendant has not attempted to show prejudice. The defendant's motion to dismiss is denied. * * *."

| July 26, 1983 | The state moved to set the case for trial |
| October 12, 1983 | Trial. The defendant was convicted of all charges |

In his brief, the defendant states:

"The defendant does not contend that the delay prejudiced his defense; nor was there pre-trial incarceration. It is the defendant's contention that given the State's unjustified conduct, and the prejudice to him personally, the Sixth and Fourteenth Amendments require dismissal."[3]

---

[3] The defendant's brief lists these facts:

"At the first motion to dismiss the defendant testified that because of the delay he postponed marriage plans and was unable to commit to his family's request that he become fully involved in the family farming operation due to his father's failing health. He was unable to expand his business and finally had to sell his interest in the business because his partners could not wait and he had to raise money for bail and for his defense. He had been unable to start a new career and his life was in a holding pattern.

"By the second motion to dismiss, defendant had suffered physical and

# I

One of the issues addressed by the parties is whether the delay is to be measured from the date of the reindictment or the date of the original indictment. We need not reach this issue because, under our precedents, the delay from the original indictment to trial was not so long or attended by circumstances so as to require dismissal because of a violation of the defendant's constitutional rights to a speedy trial.

As stated, the defendant's claims are based upon the provisions of the Oregon and federal constitutions. Article I, section 10, of the Oregon Constitution provides that "justice shall be administered openly and without purchase, completely and without delay." The related provision in the federal constitution is found in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy * * * trial * * *."

The Oregon constitutional provision is a directive to judges to administer all proceedings, not just criminal prosecutions, without delay. In *Haynes v. Burke*, 290 Or 75, 80, 619 P2d 632, 637 (1980), we stated:

"* * * [U]nlike the sixth amendment, article I, section 10, states not a 'right' of the accused but a mandatory directive not within the disposal of the parties, a difference that can bear on the enforcement of the constitutional command. * * *."

Courts have management and legal responsibility "for the pace of litigation, actively monitoring or directing the scheduling of events in the life of a case." Attacking Litigation Costs and Delay, Final Report of the Action Commission to Reduce Court Costs and Delay, American Bar Association 7-8 (1984). "The court, from the outset, must take and maintain control over each case." *Id.* at 8.[4]

---

emotional ill-effects from the now 18 month delay. He still was unable to be married or to commit to the family farm although his father had become paralyzed. He testified that the ill-effects of the delay were cummulative."

[4]

"Successful judicial caseflow management must contain several elements. The court, from the outset, must take and maintain control over each case. The sequence of events in a case must be scheduled within short time periods of each other to minimize the time spent relearning the case and to sustain a sense of urgency in the participants. At the same time, the court's calendaring practices must reasonably accommodate the attorneys' scheduling needs for adequate case preparation. Finally, the court must keep to its schedule so that everyone knows

■    ORS 135.747 (quoted in footnote 3) requires a defendant to be brought to trial "within a reasonable period of time." Ordinarily, we would first examine the question under ORS 135.747. However, the defendant has opted not to invoke ORS 135.747 (possibly because a finding that ORS 135.747 was violated would allow reprosecution by the state, *State v. Ivory,* 278 Or 499, 503, 564 P2d 1039, 1042 (1977)). A defendant who seeks outright dismissal with prejudice may opt to claim that his constitutional rights to a speedy trial have been violated, and not invoke the statute. Accordingly, we make no determination whether a violation of ORS 135.747 has been established.[5]

In this case, the total time between arrest and trial was about 18 2/3 months. The trial court found that the delay between dismissal and reindictment was due to conduct of the state. We thus attribute the total delay from the date of the first scheduled trial, August 23, 1982, to the trial, October 12, 1983, to the state. This is a period of 13 1/2 months.

The resolution of this case is governed by two recent decisions. In *State v. Ivory, supra,* we adopted the speedy trial calculus enunciated by the Supreme Court of the United States in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), as "consistent with the 'free from vexatious, capricious and oppressive delays' test which we have historically used." *State v. Ivory, supra,* 278 Or at 504-05, 564 P2d at 1042 (citing, *e.g., State v. Clark,* 86 Or 464, 168 P 944 (1917)). *Ivory* states this test:

"* * * [u]nder *Barker,* to determine whether defendant's 14th amendment rights (incorporating the 6th amendment

---

the scheduled court events will actually happen on time (See Friesen, (1984)." *Attacking Litigation Costs and Delay,* Final Report of the Action Commission to Reduce Court Costs and Delay, American Bar Association 8 (1984).

In *Barker v. Wingo,* 407 US 514, 529, 92 S Ct 2182, 2191, 33 L Ed 2d 101, 116 (1972), the Supreme Court Stated:

"* * * [T]he rule * * * places the primary burden on the courts and the prosecutors to assure that cases are brought to trial. * * *"

[5] Our decision must not be read as approving or countenancing a 560-day period between arrest and trial. In 1984, the mean age of Oregon criminal cases tried in circuit court was 153.9 days. Thirty-First Annual Report Relating To Judicial Administration In the Courts of Oregon 27 (1984). The time between the defendant's arrest and "first" trial date was 146 days; the time between the reindictment and the trial was 260 days.

right to a speedy trial) have been denied, a court must balance four factors:

"(1)   The length of the delay,

"(2)   Whether defendant asserted his right to a speedy trial,

"(3)   The reasons for the delay, and

"(4)   Prejudice to the defendant." 278 Or at 501, 564 P2d at 1041.[6]

In *Haynes v. Burks, supra,* a habeas corpus case, the plaintiff was arrested on March 13, 1978, and indicted on March 16, 1978, on a charge of murder. To the time of her habeas corpus petition in this court she had been in custody for two and one-half years and had not been tried. We discussed the constitutional standards as follows:

"The constitutional standards governing trial delay are found in article I, section 10, of Oregon's Constitution and in the 'speedy trial' guarantee of the federal sixth amendment, part of the due process required of states under the fourteenth amendment. In some respects these provisions are not identical. The Oregon Constitution commands that 'justice shall be administered * * * without delay' in all proceedings, not only in criminal prosecutions. *See Hooton v. Jarman Chevrolet Co.,* 135 Or 269, 293 P 604, 296 P 36 (1931). * * * But the conditions of an unconstitutional 'delay' in a criminal prosecution do not differ materially from the denial of a 'speedy trial' under the sixth amendment. *State v. Ivory,* 278 Or 499, 564 P2d 1039 (1977).

"As stated in *Ivory,* a decision under either standard involves consideration of a number of circumstances or 'factors' which have been identified in past decisions of this court and of the United States Supreme Court under the sixth amendment. As brought together in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), for purposes of that amendment, they include the length of the delay, the reason

---

[6] We were mistaken in adopting the second factor — "whether defendant asserted his right to a speedy trial." In *State v. Vawter,* 236 Or 85, 87, 386 P2d 915, 916 (1963), we stated:

"Contrary to the rule in most of the jurisdictions of the country, this court has consistently held that it is not incumbent upon the accused to demand a trial or take affirmative action to enforce his right to a speedy trial * * *." (Citation omitted.)

*Accord Haynes v. Burks,* 290 Or 75, 80, 619 P2d 632, 637, (1980).

for the delay, the prejudicial consequences of the delay, and the evidence of concern about these consequences shown by defendant's assertion of a demand for trial. 407 US at 530-532. There these elements or 'factors' of decision are stated in the current formula of 'balancing,' but the metaphor should not be taken too literally. We know no scales that provide a common denominator for the 'weight' of an extra month's pretrial imprisonment and the 'weight' of prosecution neglect, or good faith necessity, or deliberate delay. The point of the formula is that all relevant criteria be examined and none overlooked or ignored. *State v. Ivory,* 278 Or at 505. The proper disposition in the individual case is not a question of addition or subtraction but of examining the relevance of each element in giving effect to the constitutional guarantee.

"It is apparent that different factors are important to the substance of the constitutional command and to the remedy of dismissal. As already stated, Article I, section 10, addresses the administration of justice and protects interests of the public as well as the rights of defendants. Thus, whether there has been compliance with the constitutional injunction against 'delay' does not itself depend on prejudice to the defendant. Nor does it depend on defendant's demand for a trial. *State v. Vawter, supra.* Compliance as such depends on the length of the delay and the reasons for it. Some cases involve longer periods of preparation and pretrial procedures than others. Even with such reasons, no doubt the passage of time alone can eventually lengthen to unconstitutional dimensions. *See State v. Ivory,* 278 Or at 506. * * *." 290 Or at 80-81, 619 P2d at 637. (Footnotes omitted.)

The *Haynes* record showed that the first six months following arrest "were occupied primarily with proceedings on defense motions [and that] [f]or the two years since * * * the trial of the charge against plaintiff has awaited the disposition of the state's appeal from the circuit court's suppression order." 290 Or at 87, 619 P2d at 641. On the merits of the defendant's speedy trial claim, we assumed the existence of "* * * an elapsed time of approximately 19 months since the conclusion of the omnibus hearing that cannot be laid to any request of the plaintiff, and seven months since she moved for release or dismissal specifically on grounds of delay." 290 Or at 88, 619 P2d at 641. We held that the defendant was not entitled to dismissal of the indictment.[7]

---

[7] The disposition in *Haynes* was:

"From the principles discussed previously, it follows that if the accused

## II

■ We return to the facts of the case at bar. Here the total time between arrest and trial was 18 2/3 months. We attribute the 13 1/2-month delay between August 23, 1982, and the trial, October 12, 1983, to the state.

The three factors that we look to are:

1. The length of the delay

2. The reasons for the delay

3. Prejudice to the defendant.

■ The 18 2/3-month time between arrest and trial was considerably beyond the norm. We cannot say that that length of time, in and of itself, is so long as to compel a finding that the defendant's constitutional rights were violated. The time — 18 2/3 months — is considerably less than the two and one-half years of custody involved in *Haynes v. Burks, supra.*

As to the second factor, the reason for the delay, that responsibility is solely that of the prosecution. Within the spectrum of fault, however, the fault is minor. There are cases in which the prosecution's acts are intentional or malicious, intended to injure the defendant or gain unfair advantage. *See, e.g., Arrant v. Wainright,* 468 F2d 677, 680-81 (5th Cir 1972), *cert den* 410 US 947 (1973). Evidence of such conduct weighs much more heavily than inadvertent or negligent conduct.

In our mobile society, the postponement of criminal cases because of the unavailability of witnesses is one of the most common causes of delay. Granted, most requests for postponements could be avoided by earlier preparation of the case. We are not unaware, however, of the heavy caseloads in many district attorneys offices.[8] The postponement resulted from the prosecution's neglect, but there is no suggestion that

---

continues in custody, any further postponement of her trial will no longer be 'trial within a reasonable period of time' in the sense of ORS 135.747. That statute requires dismissal of the accusatory instrument without prejudice to a renewed prosecution, ORS 135.753(2), if the accused cannot be either tried or released on security. * * *." *Haynes v. Burks, supra,* 290 Or at 88, 619 P2d at 641.

[8] The record in the case at bar shows that, in 1982, the district attorney's staff was reduced by two attorneys. The district attorney testified to "ongoing problems of too few people in the DA's staff to get all of the business done * * *."

the prosecution was trying to obtain any unfair advantage.

■        The third factor is prejudice to the defendant. The speedy trial provisions aim to protect these interests: to prevent excessive pretrial incarceration, to limit the possibility that the defense will be impaired, and to limit anxiety and concern of the defendant. *Barker v. Wingo, supra,* 407 US at 532, 92 S Ct at 2193, 33 L Ed 2d at 118. The defendant correctly concedes that he suffered no prejudice in defending the charges made against him. His main claim is that his trial occurred later than it should have and that he suffered additional anxiety, stress, and interference with his work. The trial court recognized that "any criminal defendant is adversely affected by a pending trial" but found that the defendant's claim of prejudice was insufficient to bar prosecutions.

Most criminal prosecutions cause stress, discomfort and interference with a normal life. Delay adds to the problem. We are not convinced, however, that the defendant's additional anxiety and stress were so great as to require dismissal. We agree with the trial court that, on balance, defendant has not been deprived of his Article I, section 10, right to a "speedy trial."

## III

The same result obtains under the Sixth and Fourteenth Amendments. In *United States v. MacDonald,* 456 US 1, 102 S Ct 1497, 71 L Ed 2d 696 (1982), the Supreme Court of the United States considered a case in which a defendant had been charged by military authorities with murder. The charges were made in May 1970, were later dismissed and the defendant was discharged from service. In January 1975, federal authorities reindicted him in the United States District Court for the same crimes. After his conviction, the defendant appealed, asserting that his right to a speedy trial had been violated by the delay between the initial military charges and the ultimate civilian trial. The Supreme Court affirmed his conviction, holding that the time between dismissal of the military charges and the subsequent indictment on civilian charges may not be considered in determining whether the delay in bringing the defendant to trial violated his Sixth Amendment right to a speedy trial. 456 US at 7-9, 102 S Ct at 1501-02, 71 L Ed 2d at 703-04.

*Barker v. Wingo, supra,* which we relied upon in *Haynes* and *Ivory,* involved a 10-month pretrial incarceration and a delay of over five years between arrest and trial, "* * * a good part of [which] was attributable to the Commonwealth's failure or inability to try [the defendant] under circumstances that comported with due process." 407 US at 534, 92 S Ct at 2194, 33 L Ed 2d at 119. The court held that the defendant's Sixth Amendment rights had not been violated.

The 18 2/3-month interval between the defendant's arrest and trial was long, much longer than should have been the case. But the delay was not so great as to require the dismissal of the charges. The decision of the Court of Appeals is affirmed.

**JONES, J.,** concurring.

I concur rather than dissent in the decision of this case only because I feel that the elapsed arrest-to-trial time barely satisfies state and federal constitutional rights of the defendant. However, I wish to make clear that the efficient administration of justice should not tolerate an 18 and 2/3-month delay in bringing these routine drug cases to trial. As pointed out by Justice Powell in *Barker v. Wingo,* 407 US 514, 519, 92 S Ct 2182, 33 L Ed 2d 101 (1972), the right of an accused to a speedy trial does not address the rights of other persons in our society to have accused persons brought to trial in a prompt and efficient manner. The inability of our courts to provide a prompt trial to an accused contributes to the large backlog of cases in many Oregon courts. When cases back-up because of delay by the defendant,[1] lack of preparation by the prosecution or unavailability of judges to try cases, defendants in criminal cases are enabled to negotiate for pleas to lesser offenses than they are entitled, to be released on recognizance for lengthy periods of time awaiting trial, to be handed the opportunity to commit other crimes while awaiting trial and to flee the jurisdiction. On the other hand, delay in bringing a defendant charged with a crime to trial may well affect his ability to defend himself for the same reasons that delay

---

[1]As pointed out by Justice Powell in *Barker v. Wingo,* 407 US 514, 521, 92 S Ct 2182, 33 L Ed 2d 101, 111 (1972), delay is not an uncommon defense tactic. Many defendants could not care less if they were ever brought to trial because as the time between the commission of the crime and the trial lenghtens, prosecution witnesses may become unavailable or their memories may fade.

weakens a prosecution case: witnesses may die, leave the jurisdiction or commit acts and make statements which could be used for impeachment. Further, memories may fade and there is an enhanced possibility of loss of documentary or other physical evidence.

Our state constitution mandates that sentencing of convicted criminals is to be founded on reformation and not vindictive justice, Or Const, Art I, § 15. The delay between arrest and trial virtually halts any reformation or rehabilitation of the individual offender and, as a consequence, society as a whole suffers. We all recognize that if we are attempting to correct the behavior of our children that we cannot impose discipline for a bad act 18 months after the event and have any hope that the sanctions imposed will have any rehabilitative effect. If a person is guilty of a crime, then arrest, trial and final conviction must flow in a timely manner if rehabilitation is to be effective. If protection of society from dangerous offenders is the goal of the sentence, then timeliness of the conviction and ensuing sentence is all the more important. Of course, for those offenders who are incarcerated in lengthy pretrial detention, the costs of overcrowding county jails contribute to the already deplorable state of our penal institutions.

Since the defendant in this case had no prior criminal record of any kind and no history of violence, we assume the purpose of his probationary sentence was to rehabilitate him and was not imposed against him for the protection of society as being a dangerous offender.

What happened to the rehabilitation process of defendant Dykast when 560 days elapsed between his original arrest and his conviction resulting from a one-day stipulated facts trial? In this case there was evidence that the delay caused the defendant to postpone marriage plans and impeded his working capacity. He was restricted from carrying on his family's farming operation which was already impaired due to his father's failing health. He suffered business losses and the money that he deposited for his release was tied up in court so that he was unable to use it for his business. His defense costs mounted with each delay. He suffered mental anguish as to the uncertainty of his future and, in his words, the delay has

"made it hard for me to make decisions" and his life was placed in a "holding pattern."

As we said in *Haynes v. Burks*, 290 Or 75, 80, 619 P2d 632 (1980), the Oregon Constitution commands that "justice shall be administered * * * without delay" in all proceedings, not only in favor of a defendant in a criminal trial. To secure the rights of all the citizens of this state as well as the rights of defendants in criminal cases, the courts in this state should adopt standards as recommended by the American Bar Association, National Conference of State Trial Judges, Standards Relating to Court Delay Reduction 12, § 2.52 (1984), as follows:

> "The following time standards should be adopted and compliance monitored:
>
> * * * * *
>
> D. FELONY—90% of all felony cases should be adjudicated or otherwise concluded within 120 days from the date of arrest; 98% within 180 days and 100% within one year.
>
> MISDEMEANOR—90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated or otherwise concluded within 30 days from the date of arrest or citation and 100% within 90 days."

Further, to ensure that these standards are maintained this court, acting through the Chief Justice, should, by the authority set forth in ORS 1.001, enact a speedy trial rule similar to that adopted by other jurisdictions. A good example of a court speedy trial rule is found in the Florida Rules of Court. That state's Rule of Criminal Procedure 3.191(a)(1) provides that every person charged with a crime by indictment or information shall be brought to trial within 90 days if the charged be a misdemeanor, or within 175 days if the crime charged is a felony. Of course, the rule provides for exceptional circumstances, but the circumstances are indeed exceptional. They include:

> "* * * (1) unexpected illness or unexpected incapacity or unforeseeable and unavoidable absence of a person whose presence or testimony is uniquely necessary for a full and adequate trial; (2) a showing by the State that the case is so unusual and so complex, due to the number of defendants or the nature of the prosecution or otherwise, that it is unreasonable to expect adequate investigation and preparation within

the periods of time established by this Rule; (3) a showing by the State that specific evidence or testimony is not available despite diligent efforts to secure it, but will become available at a later time; (4) a showing by the accused or the State of necessity for delay grounded on developments which could not have been anticipated and which will materially affect the trial; (5) a showing that a delay is necessary to accommodate a co-defendant, where there is reason not to sever the cases in order to proceed promptly; (6) a showing by the State that the accused has caused major delay or disruption of preparation of proceedings, as by preventing the attendance of witnesses or otherwise."

Absent a showing of documented exceptional circumstances the charge against the accused is dismissed with prejudice and the defendant is forever discharged from the crime.

The problem of arrest-to-trial delay is not exclusively one of backlogs in our urban courts as it is in some other jurisdictions. Trial delay is also found in some rural courts in this state. For example, the Fourth Judicial District Circuit Court comprising Multnomah County has one of the most current arrest-to-trial records in the state. From January 1, 1985, to June 30, 1985, the judges in that county tried 180 trials of which 78 were court trials and 102 were jury trials, with an average elapsed time from arrest to trial of 74.5 days. Under the strong leadership of Judge Robert Paul Jones, acting as Chief Criminal Judge, the diligent efforts of pro tem Judge Thomas Price, acting as Pretrial Conference Judge, and the cooperation of the trial judges, that county was able to bring its arrest-to-trial time for felony cases from 115 days in September 1984, to 53 days in April 1985, with no increase in judicial personnel other than Judge Price and without any increase in numbers of prosecutors or defenders. These improvements were brought about by innovative internal administrative procedures. In contrast, although many of our rural county dockets are current, one of our rural counties averaged 372.5 days from arrest to trial for the same period of time. In disposing of 24 criminal cases in that county, one was tried to the court and 23 by jury trial. In Linn County, where this defendant was tried, 30 cases were tried, 9 to the court and 21 to a jury, with an average arrest-to-trial time of 106.4 days.[2] That county's record was somewhat better than the statewide

---

[2]There is no doubt that the statistics for Linn County would have been much

average for arrest-to-trial in felony cases of 128.3 days for the term January 1, 1985, to June 30, 1985. *See* Statistical Report Relating to the Circuit and District Courts of the State of Oregon, compiled by the Office of the State Court Administration, Supreme Court of Oregon (First Quarter 1985).

It should be apparent that if we follow the ABA Standards Relating to Court Delay Reduction and if we adopt a rule similar to Florida's to set specific arrest-to-trial time limits, that all the citizens of this state, including criminal defendants and crime victims, would truly reap the benefits of a "speedy trial."

Lent and Roberts, JJ., join in this concurring opinion.

---

better had it not been for the fact that the district attorney's staff was cut by two deputies because of lack of funds. The highly respected veteran district attorney of Linn County testified that the main reason for the delay in the case at bar was because of the cut in his staff, over which he had no control.