Argued and submitted November 14, 1996, affirmed June 11, petition for review denied September 23, 1997 (326 Or 58)

STATE OF OREGON,
*Respondent,*

*v.*

MARCO ANTONIO GARCIA-PLASCENCIA,
*Appellant.*

(9301-30363; CA A86917)

939 P2d 641

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

Defendant appeals from a conviction for delivery of a controlled substance, arguing that his right to a speedy trial under both the Oregon and the United States Constitutions was impinged. We affirm.

On January 14, 1993, Officer Baldassare observed defendant drive up to and enter a house that was under surveillance. After defendant left the house and drove away, an informant inside the house reported that half a pound of cocaine had been delivered to the house. Police stopped defendant's car and arrested both defendant and the passenger, Corona. During questioning, Corona stated that he did not know defendant's name and that he first met defendant earlier that day when he was hitchhiking and defendant picked him up. Corona denied having any knowledge of the cocaine. Corona was released subsequently.

Defendant was indicted for delivery and possession of a controlled substance on January 25, 1993, and arraigned on those charges on January 28, 1993. Nineteen months passed between defendant's indictment and his trial. The events that occurred during the period between defendant's indictment and trial are not in dispute. On February 18, 1993, defendant failed to appear for a pretrial conference. A warrant was issued but rescinded on May 5, 1993. Defendant failed to appear for call on April 29, 1993, and was arrested on a bench warrant on May 16, 1993. He remained in state custody until June 26, 1993, when Immigration and Naturalization Services took him to Seattle and deported him. Defendant returned to state custody on July 13, 1993. The record does not indicate when defendant was released, but he was arrested in Multnomah County on April 28, 1994. Trial on the charges in this case was set for June 10, 1994. Defendant requested a setover on June 9, 1994, and again on July 1, 1994. Then, at the state's request, the court reset the trial for July 25, 1994. On July 20, 1994, the state requested a setover, and the trial was reset to August 10, 1994. At the state's request on August 9, 1994, the court reset the pretrial conference to August 25, 1994.

On July 18, 1994, defendant moved to dismiss the charges on the ground that the delay between his indictment and trial violated his right to a speedy trial under Article I, section 10, of the Oregon Constitution[1] and the Sixth Amendment to the United States Constitution.[2] The trial court denied defendant's motion to dismiss. The state dismissed the possession charge, and the case was tried on stipulated facts. The trial court found defendant guilty of distribution of a controlled substance and entered a judgment of conviction.

■　　On appeal, defendant assigns error to the trial court's denial of his motion to dismiss and argues that the delay between his indictment and trial was unconstitutional. We review the trial court's ruling for errors of law. *State v. Gehrke-Young*, 134 Or App 256, 259, 894 P2d 1239, *rev den* 321 Or 340 (1995).[3]

■　　To determine whether defendant was denied the right to a speedy trial under Article I, section 10, of the Oregon Constitution, we consider (1) the length of the delay, (2) the reasons for the delay, and (3) the resulting prejudice to the accused. *State v. Emery*, 318 Or 460, 472, 869 P2d 859 (1994) (citing *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987)). In some cases, the pretrial delay may be so excessive that Article I, section 10, requires dismissal without further inquiry. *Mende*, 304 Or at 24. In the present case, defendant concedes that the pretrial delay, in itself, does not require dismissal, but argues that the delay is sufficient to trigger further inquiry. Inquiry into the remaining two factors is triggered if the period of time between indictment and trial is " 'substantially greater than the average.' " *Emery*, 318 Or at

---

[1] Article I, section 10, of the Oregon Constitution provides, in relevant part:

"justice shall be administered, openly and without purchase, completely and without delay * * *."

[2] The Sixth Amendment to the United States Constitution provides, in relevant part:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

[3] We are not bound by the trial court's ruling on a speedy trial motion if it is not supported, as a matter of law, by the facts. Therefore, although there may be findings of historical fact in ruling on a speedy trial motion, the ultimate conclusion is reviewable as a question of law. *Gehrke-Young*, 134 Or App at 259 n 3.

472 (quoting *Mende*, 304 Or at 23-24). The delay in the present case—19 months—is sufficient to trigger examination of the other two factors. *See State v. Wirth*, 114 Or App 496, 499, 835 P2d 952 (1992) (nine-month delay sufficient to trigger further inquiry).

We turn to the second factor in assessing whether the pretrial delay is unconstitutional—the reasons for the delay. The trial court found that, of the 19-month delay, four months and 20 days were attributable to defendant.[4] The trial court also found that the delay attributable to the state was not purposeful or caused by the state to gain a tactical or strategic advantage. The trial court based that finding on the fact that part of the delay attributable to the state resulted from accommodating procedures, such as appointment of counsel, that arose each time defendant was located after absconding. Furthermore, when defendant's whereabouts *were* known, three other jurisdictions were also vying for his presence. In addition, the trial court deemed "inexplicable" the state's inaction while defendant was in contact with his probation officer, from July 13, 1993, to March 18, 1994.

We agree with the trial court that, although the state's inaction was at times inexplicable, there was no intentional misconduct on the part of the state. Although the state was negligent in failing to bring defendant to trial sooner, conduct that intentionally causes delay weighs much more heavily against the state than does negligent or inadvertent conduct. *Emery*, 318 Or at 472.

The inquiry in this case turns on the third factor—whether defendant was prejudiced by the delay. Defendant argues that his ability to prepare a defense was impaired because Corona became unavailable as a witness during the pretrial delay. Defendant asserts that Corona would have testified that, not only did Corona have no knowledge of the cocaine, but neither did defendant. That assertion is based on defendant's argument that Corona's statement to police, that he did not know about the cocaine, may be interpreted to indicate that defendant did not know anything about the

---

[4] During the four months and 20 days attributable to defendant, he was either "on abscond status or the trial was delayed at [his] specific request." Opinion and Order, August 29, 1994.

cocaine either. Defendant argues that the trial court expressly found that defendant was prejudiced by Corona's unavailability in stating to defense counsel:

> "You're saying that when he says that he didn't know anything about cocaine, * * * he's also saying somehow that he knew that the defendant didn't have any cocaine as well and would so testify."

The state responds that the trial court's statement only clarified the theory on which defense counsel was proceeding. We agree; the trial court's statement does not constitute an express finding of prejudice.

Defendant next argues that the trial court erred because it applied the wrong legal standard when it concluded that defendant had not demonstrated "probable prejudice," and that the correct standard is whether defendant established a "reasonable possibility of prejudice" by Corona's unavailability. The state responds that *Emery* uses both terms, 318 Or at 470, 474 (quoting *Haynes v. Burks*, 290 Or 75, 90, 619 P2d 632 (1980)), and that it is unnecessary to decide which applies in this case because defendant failed to make a sufficient showing under either standard.

The state maintains that there is no indication from Corona's statement to police that his testimony would have been exculpatory. Moreover, the state asserts that it is more likely that Corona's testimony would have been harmful, because he appeared to be distancing himself from defendant by telling the police that he had just met defendant that day, did not know defendant's name, and did not go into the house with defendant. That Corona's testimony would have been harmful to defendant is supported by the fact that, earlier in the proceeding, defendant had moved to exclude Corona's statement "in its entirety" on the ground that it was inadmissible hearsay, which was "exculpatory towards [Corona] and inculpatory towards [defendant]."

In addition, the state argues that inaction by defendant suggests that Corona's testimony would not be exculpatory. The trial court found that defendant made no effort to locate or speak to Corona until almost 18 months after they were arrested and that defendant did not hire a private

investigator to locate Corona until three weeks before the speedy trial motion was filed. Furthermore, defendant reported ready for trial twice at times when Corona was not considered a necessary witness or shown to be available.

■■ There must be some degree of actual, as opposed to speculative, prejudice to establish a constitutional violation of sufficient magnitude to justify dismissal of the criminal charge. *Mende*, 304 Or at 23. *See also State v. Coggin*, 126 Or App 230, 234, 868 P2d 29 (1994); *State v. Dunn*, 123 Or App 288, 292, 859 P2d 1169 (1993), *rev den* 318 Or 459 (1994). Defendant failed to establish that his ability to prepare a defense was prejudiced by Corona's unavailability. His right to a speedy trial under Article I, section 10, was not impinged.

Defendant also argues that his right to a speedy trial under the United States Constitution was impinged. The test for whether the speedy trial guarantee of the Sixth Amendment is violated includes an additional fourth factor than the test which applies under Article I, section 10. *See Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972) (whether Sixth Amendment speedy trial guarantee is impinged depends on length of delay, reasons for delay, prejudice to defendant, *and* assertion of right). However, we have concluded that the delay did not prejudice defendant, and, therefore, it follows that defendant's right to a speedy trial under the United States Constitution was not impinged. The trial court did not err in failing to grant defendant's motion to dismiss on speedy trial grounds.

Affirmed.