Argued and submitted March 2, on appeal, reversed and remanded for trial; cross-appeal dismissed June 14, 2006

STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

JOSIAH STEPHEN SIEGEL,
*Respondent - Cross-Appellant.*

D041803T; A127206

136 P3d 1214

Paul L. Smith, Assistant Attorney General, argued the cause for appellant - cross-respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent - cross-appellant.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Approximately 18 months after receiving a citation for driving under the influence of intoxicants, defendant, not having been tried, filed a motion to dismiss on the grounds that he had not received a trial "within a reasonable period of time" in violation of ORS 135.747,[1] that the state had not administered "justice * * * without delay" as required by Article I, section 10, of the Oregon Constitution,[2] and that he had been denied the speedy trial guaranteed to him by the Sixth Amendment.[3] The court rejected the statutory argument, granted the motion under Article I, section 10, and did not reach the Sixth Amendment argument. The state appeals. Basing our decision on the length of the pretrial delay, the reasons for it, and the prejudice that it caused to defendant, *State v. Harberts*, 331 Or 72, 88, 11 P3d 641 (2000), we conclude that the state's appeal is well taken. We therefore reverse and remand for trial.

On May 17, 2003, defendant was cited for driving under the influence of intoxicants (DUII), ORS 813.010, at the scene of an automobile accident. At his arraignment on June 17, 2003, he pleaded not guilty, and the case was set for trial on December 9, 2003. A week before that, however, the state moved to reset the trial date because the prosecutor had not been able successfully to subpoena defendant's medical records, including his blood alcohol content, from the hospital where he was treated after his citation. The prosecutor attributed the difficulties to relatively new medical privacy regulations under the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Defense counsel did not object to the state's motion, and, on December 4, 2003, the trial was reset for March 31, 2004.

---

[1] ORS 135.747 states, "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

[2] Article I, section 10, of the Oregon Constitution provides, in relevant part, "[J]ustice shall be administered, openly and without purchase, completely and without delay * * *."

[3] The Sixth Amendment to the United States Constitution provides, in part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

On March 20—some 10 months after he was cited—defendant moved to reschedule the trial because defense counsel was unavailable and required additional time to prepare. An attorney from the Oregon State Bar Professional Liability Fund filed the motion and supporting affidavit, which stated that, for personal reasons made known to the court, defense counsel had been unable to remain in contact with defendant, a student then attending the University of Montana. The reason, defense counsel later explained, was that he was undergoing inpatient medical care. The state did not object, and trial was reset for May 13, 2004.

On that date, almost exactly a year after the citation, the state explained that it was not prepared to proceed, again because of evidentiary problems. By that time, the prosecutor had apparently obtained the medical records under seal but was unprepared to meet the foundational requirements for admission. The state requested another reset. The prosecutor explained:

> "[W]e are not ready at this point. We had asked for the medical records in this case to be unsealed at the March [31] hearing, defense counsel objected. We moved to have those documents inspected at call. There were additional witnesses and foundation requirements the state needs to meet in order to prove this case. The defense counsel is unwilling to stipulate to the foundational requirements for the medical records and [the blood alcohol test results]. At this point, the state is not ready. We are asking for a reset."

The court denied the motion and dismissed the DUII charge without prejudice. Mindful that the statute of limitations had not expired, an officer immediately recited defendant.[4]

On June 1, 2004, defendant waived appearance, was arraigned, and entered a not guilty plea. A trial was set for September 17, 2004, with trial call on September 10. At that trial call, defendant again waived appearance, and the court *sua sponte* reset the trial for November 23, 2004, with trial call on November 19. The prosecutor and defense counsel later represented that the setover was due to a shortage of available judges.

---

[4] Defendant had also been charged with reckless driving. He was not recited on that charge.

On November 18, 2004, 18 months after he was cited, defendant filed a motion to dismiss the case under ORS 135.747; Article I, section 10, of the Oregon Constitution; and the Sixth Amendment to the United States Constitution. On the date set for trial, November 23, the court heard argument on defendant's motion. Defense counsel argued that most of the delay was attributable to the state and that defendant had been prejudiced because he experienced anxiety from work and school disruptions caused by his repeated travels from Montana for a trial that had been serially reset.

The court, as noted above, denied the motion under the statute but granted it under Article I, section 10, resulting in dismissal with prejudice. It explained:

> "[T]he court's findings include the facts that the state is responsible [for] an unreasonable period of delay in bringing the defendant to trial in this case * * *. The defense is responsible for the period of delays due to the defense motion to reset the March 2004 trial date [but] any remaining delays are attributable to the state. The state's reasons for the delay are unreasonable because the state failed to procure a pretrial ruling on the admissibility of the defendant's medical records. The admissibility of the medical records could have been resolved without the defendant having to travel from out of state. The defendant was prejudiced by the delay because he had to travel from Montana where [he] is attending college at great expense. The prejudice to the defendant was greater than the norm for this type of case due to the length of the delay attributed to the state."

The state now appeals, asserting that the court misapplied the legal standard under Article I, section 10.[5]

We review the trial court's ruling for errors of law. *State v. Garcia-Plascencia*, 148 Or App 318, 321, 939 P2d 641, *rev den*, 326 Or 58 (1997). The applicable legal standard under Article I, section 10, has been stated and refined in several cases. Generally, we examine the length of the delay, the reasons for it, and the prejudice, if any, that it caused the defendant. *State v. Mende*, 304 Or 18, 23-25, 741 P2d 496

---

[5] Defendant filed a timely notice of cross-appeal, but he did not file a brief or appear at oral argument. We therefore dismiss his cross-appeal.

(1987). The analysis is fact specific. *Harberts*, 331 Or at 88. Although in most circumstances all of the factors come into play, in three situations a single factor can be dispositive. If the delay is not "substantially greater than the average," then the state is within constitutional limits and no further inquiry is necessary. *Mende*, 304 Or at 23-24. On the other hand, if the length of the delay is so manifestly excessive that it "shocks the imagination and the conscience," or if the state caused the delay purposely to impede the defense, then the court must dismiss the case regardless of the other factors. *Harberts*, 331 Or at 86. In all other situations, we consider all of the factors and, in doing so, we eschew any mechanical balancing process. *State v. Ivory*, 278 Or 499, 505, 564 P2d 1039 (1977).

The parties agree[6] that the state did not act in bad faith. Further, the delay was not shockingly long or manifestly excessive. *See State v. Harman*, 179 Or App 611, 615, 40 P3d 1079 (2002) (67-month total delay for DUII defendant not incarcerated pending trial not "shockingly long"). On the other hand, we conclude that the delay was longer than average for this type of case. In determining the "average" pretrial delay, the Supreme Court and this court have looked to the aspirational Standards of Timely Disposition adopted by the Oregon Judicial Conference in 1990. *E.g.*, *State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994) (citing Standards of Timely Disposition to evaluate reasonableness of delay under speedy trial statute, ORS 135.747); *State v. Adams*, 193 Or App 469, 473, 89 P3d 1283 (2004), *aff'd*, 339 Or 104, 116 P3d 898 (2005) (same); *but see State v. Dykast*, 300 Or 368, 374 n 5, 712 P2d 79 (1985) (employing state statistics to establish "mean age of Oregon criminal cases tried in circuit court"). The trial court observed, based on *Harman*, that the delay was greater than the average time of adjudication for non-felony DUII offenses. *See Harman*, 179 Or App at 623 (delay of 15 months attributed to state "is substantially greater than what is typical for complete resolution of misdemeanors such as the DUII offense at issue here"). Based on the aspirational standard of the Oregon Judicial Conference that

---

[6] Defendant did not file a brief on appeal. References to defendant's arguments are to his trial memoranda.

"90% of all * * * nonfelony cases should be adjudicated or otherwise concluded within 90 days from the date of arraignment, 98% within 180 days and 100% within one year," *Emery*, 318 Or at 471 n 17, we agree with the trial court that the delay was substantially greater than average.

██ We turn, therefore, to the reasons for delay and prejudice to defendant. In our evaluation of those factors, "[w]e do not balance the elements one against the other. Instead, we examine the relevance of each in giving effect to the constitutional guarantee of a speedy trial." *State v. Rohlfing*, 155 Or App 127, 132, 963 P2d 87 (1998). That examination is informed in part by the duration of the delay, so that a longer delay could cause the "reasons for delay" or "prejudice to defendant" factors to weigh more heavily in defendant's favor. *Mende*, 304 Or at 24. Further, neutral reasons for delay receive less weight than reasons caused by negligence, but they must nonetheless be "weighed against the government because 'the ultimate responsibility for such circumstances must rest with the government rather than the defendant.'" *Harberts*, 331 Or at 84 (quoting *Barker v. Wingo*, 407 US 514, 531, 92 S Ct 2182, 33 L Ed 2d 101 (1972)).

Delays caused by defendant obviously do not weigh heavily, if at all, against the state. Here, of the 18-month delay, defendant was responsible for the delay from March 20, 2004 through May 13, 2004, one month and 23 days. In addition, the transcript of the November 23, 2004, hearing on defendant's motion to dismiss confirms that the request for reset was due to defense counsel's medical leave.

The remaining delays amount to 16 months and 17 days. Whether caused by the court or prosecution, those delays are attributable to the state. *See Harberts*, 331 Or at 83 (requirement of Article I, section 10, that justice shall be administered without delay "is addressed to the prosecution and to the court").

The September 10, 2004, setover due to lack of available judges resulted in a delay of one month and 13 days. Although a shortage of judicial resources can, in some circumstances, be considered unreasonable, *State v. Adams*, 339 Or 104, 110-11, 116 P3d 898 (2005), we do not weigh it

heavily against the state in this case due to its brevity and to the fact that defendant was not incarcerated.

The remaining delays caused by the state are attributable to the prosecutor's failure successfully to subpoena defendant's medical records during the first six months after defendant was cited for DUII and to the prosecutor's inability to meet foundational requirements once the records were obtained after an additional six months.

With respect to the unsuccessful subpoena, the prosecutor attributed the difficulty in obtaining the blood draw evidence to relatively new privacy restrictions imposed under HIPAA, which, the state asserted, were unclear to both the hospital and the prosecutor. In the November 23, 2004, hearing on defendant's motion to dismiss under Article I, section 10, the state's attorney represented that the prosecutor previously assigned to the case initially issued a subpoena that did not comply with the recently established HIPAA regulations, was refused, and then reissued the correct subpoena. The resulting delay lasted three months and 27 days. The pertinent HIPAA regulations governing the acquisition of medical records had been published for more than a year before the state issued the noncompliant subpoena.[7] For that reason, we reject the state's excuse and conclude that the delay was due to negligence.

The delay caused by the prosecutor's inability to meet foundational requirements for blood draw evidence under the then newly amended ORS 813.160[8] lasted three months and 28 days. The trial court found that this delay was

---

[7] The amendments to the particular privacy regulations apparently at issue in this case, 45 CFR §§ 164.102 to 164.534, were published on August 14, 2002. Standards for Privacy of Individually Identifiable Health Information, 67 Fed Reg 53,182 (Aug 14, 2002).

[8] ORS 813.160 states, in part:

"(1) A chemical analysis is valid under ORS 813.300 if:

"(a) It is an analysis of a person's blood for alcohol content and is performed in:

"(A) A laboratory certified or accredited under 42 C.F.R. part 493 and approved for toxicology testing;

"(B) A laboratory licensed under ORS 438.110 and approved for toxicology testing; or

unreasonable because the prosecutor waited until the trial date to ask for a postponement, rather than seek a pretrial ruling on the admissibility of the records. Thus, according to the court, whether the foundational requirements posed a reasonable barrier to timely disposition of the case, the state acted unreasonably in asking for a postponement on an issue that could have been resolved in a preliminary hearing under OEC 104. We agree. Thus, that delay was due to inefficient practices on the part of the state.

Inefficiency and negligence, however, are a far cry from purposefully dilatory conduct. For that reason, although the delays associated with obtaining defendant's blood alcohol content from the hospital weigh against the state, they do not do so significantly. *See Garcia-Plascencia*, 148 Or App at 322 (even where "the state was negligent in failing to bring [the] defendant to trial sooner," resulting in a nearly 14-month delay, its conduct did not preponderate in the defendant's favor).

The case therefore turns on the prejudice factor. Three types of prejudice figure in our evaluation of whether a delay violates the speedy trial guarantee under the Oregon Constitution: excessive pretrial detention, impairment of the defense, and anxiety and concern. *Emery*, 318 Or at 473. Here, defendant experienced no pretrial detention, nor has he demonstrated any impairment to his defense.

Rather, defendant asserted and the trial court found that he suffered prejudice due to anxiety caused by the demands of the legal proceedings, including the expense of traveling from Montana when he did not waive appearances, the inconvenience of missing work and school due to his travels, and the stress of the unresolved case. Although we do not question the trial court's determination that defendant has

---

"(C) A forensic laboratory established by the Department of State Police under ORS 181.080 that is accredited by a national forensic accrediting organization."

The statute was substantially amended in 2003. Or Laws 2003, ch 19, § 1. The state also explained that the parties disputed whether the implied consent law, ORS 813.320, applied to medical, as opposed to forensic, blood draws, an issue resolved by the Oregon Supreme Court on September 23, 2004, in *State v. Snyder*, 337 Or 410, 97 P3d 1181 (2004).

endured some measure of anxiety and inconvenience, we cannot agree that he has established a degree of prejudice that, when evaluated together with the reasons for delay, warrants dismissal.

"Anxiety and stress are inherent in any criminal prosecution." *State v. Fleetwood,* 186 Or App 305, 319, 63 P3d 42, *rev den,* 336 Or 125 (2003). Even when a defendant suffers the stress of a coming trial over a period of delay that is only partially justified, that degree of prejudice does not rise to the level necessary to substantiate a claimed speedy trial violation. *Harman* is instructive. There, a DUII defendant's 67-month delay between arraignment and trial caused anxiety and stress-related physical effects that "weigh[ed] in his favor," as did some unjustified periods of delay, but those facts alone were insufficient. *Harman,* 179 Or App at 617-18. The court explained, the "nominal weight of those factors generally will not overcome the absence of either lengthy pretrial incarceration or meaningful prejudice to the defense." *Id.* at 620; *see also Emery,* 318 Or at 473-74 (approximately two-year, unjustified pretrial delay on citation for illegal possession of a game animal caused anxiety and inconvenience to defendant but was insufficient to require a speedy trial dismissal under Article I, section 10); *Dykast,* 300 Or at 378 (defendant's anxiety and stress due to almost 19-month pretrial delay for two counts of delivery of a controlled substance did not warrant dismissal); *Fleetwood,* 186 Or App at 319 (in delivery of a controlled substance trial, defendant's justified, nearly nine-year pretrial delay, which caused "substantial stress and anxiety[,] * * * lost opportunities for employment, job training, housing, and travel[,] * * * stress in his personal relationships and onerous supervision conditions," did not warrant dismissal under Article I, section 10, where defendant was not incarcerated and did not show impairment to defense (internal quotations marks omitted)). In this case, although defendant's stress was exacerbated by the disruption of his work and studies in Montana and by the expense of travel, that degree of stress cannot "overcome the absence of * * * lengthy pretrial incarceration" or "meaningful prejudice to the defense" in order to establish a level of prejudice that would sustain defendant's claim. *Harman,* 179 Or App at 620.

When we consider together the length of delay, the reasons for it, and the anxiety that defendant suffered, and measure them against the standard established in previous cases, we do not find "a constitutional violation of sufficient magnitude to justify dismissal of the criminal charge." *Garcia-Plascencia*, 148 Or App at 324.

On appeal, reversed and remanded for trial; cross-appeal dismissed.