Submitted on record and briefs December 20, 2007, affirmed March 19, 2008

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# PATRICK MICHAEL OLSTAD,
*Defendant-Appellant.*

Multnomah County Circuit Court
031034956; A131925

180 P3d 114

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and Ernest G. Lannet, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Riggs, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant appeals from a conviction for aggravated theft, ORS 164.057, assigning error to the trial court's denial of his motion to dismiss for lack of a speedy trial under Article I, section 10, of the Oregon Constitution. We review for errors of law, *State v. Siegel*, 206 Or App 461, 465, 136 P3d 1214 (2006), and affirm.

Defendant stipulated to the following facts. On May 10, 2003, Officer Wallis saw a car, in which defendant was a passenger, exceeding the speed limit. After stopping the car, Wallis learned that defendant had an outstanding arrest warrant. Wallis took defendant into custody and obtained the driver's permission to search the car. While searching the car, Wallis found a camera bag with an expensive Pentax camera and additional camera equipment inside the bag. The driver told Wallis that defendant owned the bag and its contents. Wallis asked the driver whether the camera and camera equipment were stolen, and the driver responded,

> "Look, he's my cousin. I can't just give him up like that. Let's just say he's been stealing things like that for years. He doesn't work, and he's never bought a camera like that before."

Wallis then searched defendant's possessions and found, in defendant's wallet, pawn shop receipts listing various cameras and camera equipment that defendant had pawned earlier that day. Defendant's name was listed on the pawn shop receipts. Wallis seized the camera and camera equipment and later learned that the items on the receipts had been stolen.

Four days after seizing the camera and camera equipment, Wallis received a telephone call from defendant. Defendant asked Wallis to return the camera equipment and receipts. Wallis responded by asking defendant to come to the police department to demonstrate proof of ownership. Defendant said he would come to the department but never appeared there.

On October 7, 2003, a grand jury indicted defendant for theft. Seventeen months later, on March 10, 2005, the

state served an arrest warrant on defendant. The next day, defendant was arraigned on the indictment and entered a plea of not guilty. Defendant then filed a motion to dismiss for lack of speedy trial under both ORS 135.747 and Article I, section 10, of the Oregon Constitution. On June 3, 2005, the trial court dismissed the first indictment without prejudice pursuant to ORS 135.747, but allowed defendant to reserve his constitutional claims, should the state reindict him.

Meanwhile, in May or June 2005, defense counsel instructed an investigator, McDuffie, to locate a witness named Watson. In June 2005, McDuffie identified Watson's father's house as Watson's last known address. Watson's father, who did not have much contact with Watson, informed McDuffie that Watson was in a drug treatment program and that he would attempt to find the name of the program. Later that month, after exchanging phone calls, Watson's father informed McDuffie that Watson was no longer in the drug treatment program.

On July 27, 2005, a grand jury reindicted defendant. A warrant was issued for defendant's arrest, and defendant was arrested. The next day, defendant was arraigned on the new indictment, and trial was set for September 12, 2005. However, the trial date was set over numerous times on both the state's and defendant's motions.

Meanwhile, in October 2005, defense counsel located Watson's telephone number and provided it to McDuffie, who contacted Watson. In a telephone conversation, Watson informed McDuffie that, after defendant was arrested, she had "some guy" (whose name she couldn't remember) call the police property room to try to retrieve the seized camera and camera equipment.

The next month, in mid-November, Watson was served with a subpoena. The trial, however, was again set-over, and McDuffie called Watson to inform her of the set-over. In response, Watson told McDuffie that she was leaving town because a family member had died and that she did not know when she would be returning. Watson then stated that she would call back and hung up. Watson did not call back.

McDuffie tried to call Watson's telephone number approximately 10 more times, but she was unable to contact Watson again.

On January 13, 2006, defendant filed a motion to dismiss for lack of a speedy trial pursuant to Article I, section 10, of the Oregon Constitution.[1] Eventually, the trial court denied defendant's motion. Subsequently, the trial court, in a stipulated facts trial held on March 7, 2006, found defendant guilty of aggravated theft in the first degree.

■　　　On appeal, defendant reasserts his argument that Article I, section 10, of the Oregon Constitution requires his case be dismissed because he has been denied a speedy trial. Article I, section 10, of the Oregon Constitution provides:

> "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

To determine whether a defendant has been denied a speedy trial under Article I, section 10, we consider (1) the length of the delay, (2) the reasons for the delay, and (3) the prejudice to the accused because of the delay. *State v. Harberts,* 331 Or 72, 84-88, 11 P3d 641 (2000); *State v. Ivory,* 278 Or 499, 501-04, 564 P2d 1039 (1977) (adopting the United States Supreme Court's Sixth Amendment speedy trial analysis in *Barker v. Wingo,* 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972), for purposes of the speedy trial analysis under Article I, section 10).

■　　　Generally, we consider all three of the above factors. *State v. Siegel,* 206 Or App at 466. However, in some circumstances, a single factor is dispositive. *Id.* First, if the delay is not "substantially greater than average," the speedy trial provision has not been violated. *Id.* (citing *State v. Mende,* 304 Or 18, 23-24, 741 P2d 496 (1987)). However, if the delay is so "manifestly excessive" that it shocks the imagination

---

[1] On appeal, defendant does not assert that the trial court violated his federal speedy trial right found in the Sixth Amendment to the United States Constitution.

and the conscience, or if the state caused the delay to purposefully impede the defense, then the speedy trial provision has been violated, regardless of the other factors. *Id.* (citing *Harberts*, 331 Or at 86). In all other situations, we consider each factor. In doing so, however, we do not apply a mechanical balancing test:

> "[T]hese elements or 'factors' of decision are stated in the current formula of 'balancing,' but the metaphor should not be taken too literally. We know no scales that provide a common denominator for the 'weight' of an extra month's pretrial imprisonment and the 'weight' of prosecution neglect, or good faith necessity, or deliberate delay. The point of the formula is that all relevant criteria be examined and none overlooked or ignored. The proper disposition in the individual case is not a question of addition and subtraction but of examining the relevance of each element in giving effect to the constitutional guarantee."

*Haynes v. Burks*, 290 Or 75, 81, 619 P2d 632 (1980) (citation omitted).

In this case, the grand jury indicted defendant on October 7, 2003, and the trial court dismissed that indictment on June 3, 2005—approximately 20 months after the initial indictment. The defendant was reindicted on July 27, 2005, and a stipulated facts trial was held on March 7, 2006—29 months after the initial indictment. Defendant concedes "that the 29-month delay does not automatically warrant dismissal because it shocks the conscience or because the state purposely caused that delay to prejudice defendant."

The first factor to consider in this case is the length of the delay. As a threshold matter, the parties disagree on when the constitutional speedy trial clock starts running. The state asserts that "[t]he calculation of the length of delay begins from the time of the re-indictment." In contrast, defendant argues that we should consider "the delay between the original indictment and the day of trial."

In *State v. Vasquez*, 336 Or 598, 610, 88 P3d 271 (2004), the Supreme Court reasoned that "an official action that is sufficient, standing alone, to commence a prosecution starts the running of the 'without delay' clock" under Article

I, section 10. In light of that general principle, either argument made by the parties is tenable. However, for the reasons explained below, whether the clock starts running on the grand jury's return of the first indictment or the grand jury's return of the second indictment makes no difference to the analysis. *See, e.g., State v. Dykast*, 300 Or 368, 373, 712 P2d 79 (1985) (holding that, even if the calculation commenced on the date of the first indictment, the defendant's right to a speedy trial was not violated).

Thus, we must consider whether the delay is substantial. *Mende*, 304 Or at 23-24. If it is, then that delay becomes a relevant factor in giving effect to Oregon's constitutional guarantee. To determine whether the delay is substantial, we look to the aspirational standards of timely disposition adopted by the Oregon Judicial Conference in 1990. *State v. Emery*, 318 Or 460, 471, 869 P2d 859 (1994); *Seigel*, 206 Or App at 466. Those standards provide that "90 percent of all felony cases should be adjudicated or otherwise concluded within 120 days from the date of arraignment, 98 percent within 180 days, and 100 percent within one year, except for exceptional cases in which continuing review should occur." In this case, the delay exceeds the outer limit of one year reserved for "exceptional cases." Therefore, we conclude that the 29-month delay is "substantially greater than average."

The second factor—the reasons for the delay—is unexplained on the record before us. In *State v. Green*, 140 Or App 308, 315-16, 915 P2d 460 (1996), we considered an unintentional 33-month delay between the indictment and the service of an arrest warrant:

> "The unexplained failure to serve the arrest warrant caused much of the delay here (two years, nine months). Although the state bears responsibility for that, defendant does not characterize the delay as intentional. Defendant concedes that the time lag is attributable to 'negligence by the state.' Although that weighs against the state, in the absence of intentional misconduct it does not weigh heavily. Accordingly, the analysis turns on whether defendant was prejudiced by the delay."

Our decision in *Green* informs our analysis in this case. Because defendant does not claim that the state acted intentionally to cause prejudice to defendant, the analysis turns on whether defendant was actually prejudiced by the delay.

■ A defendant may establish the third factor—prejudice—in three ways: "(1) the damage arising from lengthy pretrial incarceration; (2) the anxiety and public suspicion resulting from public accusation of a crime; and (3) the impairment of the defense." *State v. Tiner*, 340 Or 551, 557, 135 P3d 305 (2006), *cert den*, 127 S Ct 1125 (2007) (citations omitted). Initially, defendant asserts in his brief without further explanation that he "did suffer a substantial period of pretrial incarceration." However, on the record before us, we cannot tell for what length of time, if any, defendant was subject to pretrial incarceration on the aggravated theft charge. Therefore, defendant has not carried his burden of providing a record sufficient to demonstrate that he was prejudiced by lengthy pretrial incarceration on the aggravate theft charge. *King City Realty, Inc. v. Sunpace Corp.*, 291 Or 573, 582, 633 P2d 784 (1981); *Ferguson v. Nelson*, 216 Or App 541, 549, 174 P3d 620 (2007) ("An appellant bears the burden of providing a record sufficient to demonstrate that error occurred.").

Finally, defendant asserts that "[t]he delay prejudiced [his] ability to defend himself because, during the delay, a defense witness went missing whose testimony would have strongly rebutted the state's evidence that [defendant] knowingly took property from another with the intent to deprive that person of the property." Defendant explains,

"In preparing for trial, defendant correctly surmised that the state would proffer testimony from a police officer that he had received a telephone call from defendant in which (1) defendant requested the return of property that the police had seized from defendant and (2) defendant claimed ownership of that property. That testimony constituted affirmative evidence that defendant had committed aggravated theft in the first degree. During the pretrial delay, defendant subpoenaed a witness who would testify at trial that she had an intermediary, who was not defendant, make that call in an attempt to recover that property. That testimony would have rebutted the state's evidence and  .

could have created reasonable doubt as to whether defendant intended to permanently deprive the property rights of the owner of that property. Consequently, the delay caused defendant a reasonable possibility of prejudice to his defense."

We are unpersuaded by defendant's argument. Defendant entered into a stipulation for purposes of his stipulated facts trial that incorporated the trial court's findings on his motion to suppress the evidence seized from the car. Those stipulated facts permitted the trier of fact to infer that the stolen camera and equipment found in the car in which defendant was riding were some of the items stolen from the victim. Some of the other items stolen from the victim had been pawned, and the pawn receipts with defendant's name on them were found in defendant's wallet. Also, the court's ruling on defendant's motion found that the driver of the vehicle in which defendant was riding told the officer that defendant had "been stealing things like that for years. He's never had a job." Moreover, the court found that Wallis determined that the items had been stolen four days after they had been seized, and

"it is on that same day, apparently, that someone he believes to be [defendant] calls him and they have a conversation further about the return of those items. He said he had a pleasant conversation with that person on the phone and it matched the pleasantness of the defendant at the scene, and they discussed things that happened at the scene, which further led him to believe that it was [defendant] he was talking to."

At most, Watson's testimony could have impeached Wallis's testimony that he believed he was conversing with defendant but it could not refute the other evidence that defendant stipulated to. Indeed, Watson's statement suggested that she had someone contact the police property room rather than Wallis. Consequently, we conclude that defendant failed to demonstrate that the loss of Watson as a witness caused a "reasonable possibility of prejudice to the defendant's ability to prepare a defense." *State v. Tiner,* 340 Or at 555. Defendant does not otherwise argue that he was prejudiced.

Affirmed.