Argued June 16, affirmed in part, reversed in
part July 30, 1970

# STATE OF OREGON, *Appellant, v.* BOBBY RAY ROBINSON, *Respondent-Cross-Appellant.*

473 P2d 152

*Gary D. Gortmaker*, District Attorney, Salem, argued the cause and filed the brief for appellant.

*Elton T. Lafky*, Salem, argued the cause and filed the brief for respondent-cross-appellant.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Defendant was indicted for first degree murder. He had previously been hospitalized for alcoholism, and at the time of the crime was working at a general hospital and living in Salem. Several days after the slaying, two sergeant detectives of the Salem Police Department visited defendant at his apartment

shortly after his working hours. The upshot of their visit was a series of oral admissions made by defendant. After the case had been set for trial and continued several times, on the day it was to commence, and before calling a jury, defendant moved to suppress use of the statements as evidence. After extensive testimony (this testimony covers over 500 pages of transcript), the trial court allowed the motion to suppress. It is from this order that the state has appealed under authority of ORS 138.060 (4), which provides:

"The state may take an appeal to the Court of Appeals from:

"\* \* \* \* \*

"(4) An order made prior to trial suppressing evidence."

ORS 138.160 requires that the order from which the appeal was taken be stayed. It was necessary to resolve the appeal before the trial could proceed if the district attorney was unwilling to abandon his asserted right to use the admissions in evidence.

Pursuant to a search warrant body hairs were taken from defendant for crime laboratory tests. Defendant's counsel moved to suppress evidence deriving therefrom because he had demanded the right to be present at the time of taking the hairs, but they were taken without his presence. This motion was denied and defendant has appealed from the order of denial.

Defendant moved for immediate resumption of trial or dismissal of the indictment when the prosecution elected to appeal the suppression of the admissions because he claimed (1) ORS 138.060 (4) was inapplicable, and (2) failure to proceed would violate his right to a speedy trial under federal and state con-

stitutions and ORS 134.120. The motion was denied and defendant has appealed from the order of denial.

## THE STATE'S APPEAL OF THE RULING ON VOLUNTARINESS OF THE ADMISSIONS

The detectives testified that they gave *Miranda*, infra, warnings to defendant when they first went to his apartment at about 4 p.m., but they were in sharp conflict on whether they warned him that he was a focal suspect. One said he was so warned; the other said that he was told they were just seeking background information. They agreed that defendant told them he had an attorney, whom he named, and that he stated several times that he wanted to call the attorney. There was no phone in the apartment, but it was known there was a public phone across the street. One detective knocked at the door of two other apartments in an effort to get to a phone without success, but did not go across the street to the one he knew he could use or offer to take the defendant or let him go to a phone. They testified defendant was not restrained from calling his attorney, but that he himself kept putting it off.

More importantly, all of the time they talked with him defendant kept sipping at a bottle of vodka and a can of beer. The detectives knew that he had been hospitalized for alcoholism. They said he consumed up to one-third of a bottle (about eight ounces) of vodka. After about one and three-quarters of an hour defendant commenced making incriminating admissions and the detectives arrested him for murder and took him to the police station. They testified that at the point when they arrested him defendant seized two boxes of pills sitting beside the vodka bottle,

knocked them to the floor, and took at least one pill, washing it down with vodka. One detective said he didn't know what the pill was; the other said defendant described it as "A 400-gram Thorazine," and a doctor who saw defendant over an hour later said they were described to him only as sleeping pills. *The detectives said they did not look at the pill boxes to see what they were.* Strangely, although it was stipulated that if defendant's landlord and relatives were called as witnesses they would testify that they visited the apartment a few days later, and that it was locked from the time of defendant's arrest and no one was in it until they went through it, that when they went through it the boxes of pills and the liquor containers were not there. The detectives testified they left the pills and containers in the apartment when they removed the defendant, and that they were not there when they went back with a search warrant several days later. At the police station, within a very short time after leaving the apartment, defendant was seen to be so incoherent and violent that he could not be booked or arraigned.

■ The trial court concluded: "I am not satisfied that at 6:00 o'clock, totality of circumstances indicates a completely voluntary act." The state must prove, at least to the "satisfaction" of the court in an *in camera* hearing that the admission was voluntary. *State v. Brewton*, 238 Or 590, 603, 395 P2d 874 (1964).

■■ Standing alone, voluntary intoxication of a suspect at the time he makes admissions or a confession usually is not a reason to exclude them from evidence. It is a factor to consider with other circumstances.

"The general rule applicable to confessions obtained from persons under intoxication has been

well stated to the effect that 'proof that the accused was intoxicated at the time he confessed * * * will not, *without more,* bar the * * * confession in evidence * * *.' " (Emphasis supplied.) *People v. Schompert,* 19 NY2d 300, 305, 226 NE2d 305 (1967).

Here, there was more than voluntary intoxication. The defendant wanted to confer with his attorney and was given little or no opportunity to do so; he was a known alcoholic whose weakness was played upon by the detectives and it was claimed that taking drugs after giving the admissions was the final reason for his incoherence at the police station, but the proof was questionable, to say the least. See *State v. Shannon,* 241 Or 450, 405 P2d 837 (1965) ; *Frye v. Gladden,* 1 Or App 629, 465 P2d 716 (1970) ; *State v. Williams,* 1 Or App 30, 458 P2d 699 (1969) ; *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966) ; *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964) ; *Jackson v. Denno,* 378 US 368, 84 S Ct 1774, 12 L Ed 2d 908, 1 ALR 3d 1205 (1964) ; and *Massiah v. United States,* 377 US 201, 84 S Ct 1199, 12 L Ed 2d 246 (1964).

Our discussion of the state's appeal disposes of all assignments of error made thereunder. As to that appeal, the trial court's ruling is affirmed.

### THE DEFENDANT'S CROSS-APPEAL OF THE RULING DENYING THE MOTION TO SUPPRESS THE TAKING OF BODY HAIR

The facts upon which this cross-appeal is based are stated in a stipulation in a colloquy between counsel and the court:

"MR. LAFKY: * * * And so the other matter boils down to the situation of hair taken pursuant

to an Order and the search warrant by the Court and I think the facts can be relatively stipulated to.

"* * * * *

"MR. LAFKY: And that issue was basically only this: I'll submit to the Court that I forced the State to obtain a search warrant in order to obtain those hair samples. And my objection was the fact that I advised the District Attorney or the State, prior to the taking of the hair, that I wanted to be present when it was taken. And my client objected to the taking of the hair in the Marion County Jail unless I was present. And it was obtained without my presence; and that's the gist of the argument with respect to that suppression.

"MR. GORTMAKER: * * * [T]he fact that it was taken by a medical doctor in the jail under the supervision—or by the doctor and with the crime detection laboratory technician present. And we attempted to find Mr. Lafky so that he could be present. We couldn't find him and so we went ahead and took the hair samples.

"MR. LAFKY: * * * [T]his was done during the noon hour, your Honor, and it would have been a little difficult to have found me.

"MR. GORTMAKER: You were in Judge Sloper's chambers. I found you right afterwards.

"MR. LAFKY: And Mr. Gortmaker was advised in Judge Sloper's chambers about—when the issue came up prior to taking it, 'I understand your client is going to resist taking the hair.' I said, 'No, he's not going to resist unless I'm not allowed to be present. That's my only concern: that I want to be present when the hair is taken to see what is done.'

"* * * * *

"THE COURT: Well, are you willing to stipulate, both of you, that those are the facts on which the motion to suppress lies?

"MR. GORTMAKER: Yes, sir.

"MR. LAFKY: Yes, sir."

∎ The state may take specimens of body substances for criminal detective work. *Schmerber v. California*, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966). *Schmerber* quotes from *Holt v. United States*, 218 US 245, 31 S Ct 2, 54 L Ed 1021 (1910).

> "* * * '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material * * *.'"

The district attorney was aware that defendant's counsel had demanded that he be present and the defendant demanded counsel's presence. The stipulation indicates nothing less than a tacit agreement to that effect. Little inconvenience would have been occasioned in making a previous appointment to have defendant's counsel present.

∎ We view failure to abide by this tacit agreement as reason to suppress use of the hair taken in violation thereof. We view the matter as one of ethics, and do not rest our opinion on the basis of constitutional rights of the defendant, as was done in a similar case in Alaska. *Roberts v. State*, 458 P2d 340 (Alaska 1969). In that case the Alaska Supreme Court said:

> "We are influenced in reaching this conclusion by the dubious ethical character of the government's action in dealing directly with the accused after counsel had been appointed * * *."

We see no reason why other body hairs for study cannot yet be taken with counsel present. As to this

cross-appeal the trial court's ruling is reversed. This holding is limited to the facts of this case. We do not pass on the question of need for a search warrant for the taking of body substances in criminal investigations, or imply that an attorney need be present when such substances are taken except in circumstances such as existed here.

## DEFENDANT'S CROSS-APPEAL FROM THE DENIAL OF MOTION FOR DISMISSAL

Defendant's brief makes no assignments of error as required by the rules of this court. Consequently, it is difficult to follow the argument. The conclusion of the cross-appellant's brief contains a short argument based upon the due-process and equal-protection provisions of the United States and Oregon Constitutions. They appear to be makeweights without specific application to defendant's appeal. We ignore this argument because it was not raised in the trial court and it is not included in any claim of error in this appeal. The index to the cross-appellant's brief appears to state the essence of defendant's claim of error, although it does not appear in the brief itself:

"Issue No. 2

"The Court below erred in denying Defendant's motion for immediate resumption of trial for these reasons: (1) ORS 138.060 (4) was intended to apply to physical evidence, not to confessions; (2) the order to suppress was not made prior to trial, as required by ORS 138.060 (4); (3) allowance of the appeal denies the Defendant his right to a speedy trial * * *."

We will consider the defendant's arguments in the above order.

■ ORS 138.060 (4) provides:

"The state may take an appeal to the Court of Appeals from:

"* * * * *

"(4) An order made prior to trial suppressing evidence."

Defendant argues that because the legislature rejected several proposed amendments to this statute while it was under consideration and that those amendments, if adopted, would have made the statute specifically applicable to confessions and to orders made during trial, we should view the rejection of the amendments as an expression of legislative intent to exclude their meaning.

■ Confessions or admissions are evidence when they are received in evidence. The language of the statute in regard to orders "suppressing evidence" is clear and unambiguous. In this regard there is no need to interpret legislative intent. *Boggs v. Multnomah County*, 2 Or App 517, 470 P2d 159 (1970) ; *Franklin v. State Ind. Acc. Com.*, 202 Or 237, 241, 274 P2d 279 (1954).

■ ■ The word "trial" may have different meanings in different situations. *Pfleeger v. Swanson et al*, 229 Or 254, 257, 367 P2d 406, 1 ALR 3d 707 (1961). We find no authority for the view that in criminal proceedings a trial commences before the jury is called to be examined on *voir dire*, and none has been cited. In the case at bar such a jury had not been called before the preliminary hearing commenced on the motions.

"* * * In general, it has been held that the trial begins when the jury are called into the box for examination as to their qualifications—when

the work of impaneling the jury begins—and that the calling of the jury is a part of the trial. * * * [I]n criminal cases it has been declared that the trial begins after the jury is impaneled, or with the swearing of the jury." 53 Am Jur 29, Trial § 4.

The latter appears to be the basis for the determination of when jeopardy attaches. *State v. Chandler et al*, 128 Or 204, 274 P 303 (1929) ; *State v. Steeves*, 29 Or 85, 43 P 947 (1896).

We hold that the trial had not commenced when the hearing on the motions was held. ORS 138.060 (4) was intended to apply to orders such as that from which the state appealed in the present case.

This point is based upon state and federal constitutions and ORS 134.120 assuring the right to a speedy trial. The latter provides that if the defendant is not brought to trial within a "reasonable" time and any delay is not caused by his application or consent, the indictment shall be dismissed unless good cause to the contrary is shown. Oregon Constitution, Art I, § 10 provides that "* * * justice shall be administered * * * without * * * delay."

The deceased was found dead on June 12; defendant was indicted June 25; the first motion to suppress was filed by defendant August 27; the *in camera* hearing on the motion commenced December 5 and concluded December 12; and the order denying the motion was made December 16, all in 1969. Between June 25 and December 5, defendant filed 14 motions which required action by the court. They included such requests as appointment of psychiatrists, discovery, to hold the district attorney in contempt, continuance because defendant's attorney was ill, and for change of judge and venue. The prosecution filed five similar motions dur-

ing the same period of time. It has taken about seven months to move from Notice of Appeal to this decision. A trial, after conclusion of this appeal, can be had in less than one and one-half years from indictment.

■ In *State v. D'Autremont*, 212 Or 344, 317 P2d 932 (1958), the right to a speedy trial was held to be a guarantee only against arbitrary and oppressive delays, citing *State of Oregon v. Kuhnhausen*, 201 Or 478 at 520.

In *State v. Robinson*, 217 Or 612, 624, 343 P2d 886 (1959), where the defendant had demurred to the indictment and a period of about five months elapsed before the demurrer was decided, the court said that the defendant must be deemed to have consented to the delay by reason of his demurrer. See also *State v. Hays*, 1 Or App 347, 462 P2d 702 (1969); *State v. Vawter*, 236 Or 85, 386 P2d 915 (1963); and Annotation, 57 ALR 2d 302 (1958).

As noted, the most substantial part of any delay in the case at bar came about as a result of the defendant's motions, regardless of how meritorious they were.

■ In ORS 138.060 the legislature provided a method whereby the state may forthwith appeal adverse results of a motion to suppress. Good reason for the legislation is presumed and it should not be deemed unconstitutional unless conflict with the constitution is clear, palpable, and free from doubt. *Horner's Market v. Tri-County Trans.*, 2 Or App 288, 467 P2d 671 Sup Ct *review denied,* 256 Or 124, 471 P2d 798 (1970). We do not find such conflict between ORS 138.060 (4) and Art I, § 10 of the Oregon Constitution.

■ In *Dickey v. Florida*, 398 US 30, 90 S Ct 1564, 26

L Ed 2d 26 (May 25, 1970), the Supreme Court of the United States reaffirmed its previous holdings in *Klopfer v. North Carolina,* 386 US 213, 87 S Ct 988, 18 L Ed 2d 1 (1967), and *Smith v. Hooey,* 393 US 374, 89 S Ct 575, 21 L Ed 2d 607 (1969), that the United States Constitution's Sixth Amendment right afforded an accused to a speedy trial was made applicable to the states through the Fourteenth Amendment. In an extensive and scholarly concurring opinion, Mr. Justice Brennan reviewed questions raised by the speedy-trial provision. He said:

> "* * * '[W]hile justice should be administered with dispatch, the essential ingredient is orderly expedition and not mere speed.' Smith v. United States, 360 US 1, 10, 3 L Ed 2d 1041, 1048, 79 S Ct 991 (1959). It appears that consideration must be given to at least three basic factors in judging the reasonableness of a particular delay: the source of the delay, the reasons for it, and whether the delay prejudiced interests protected by the Speedy Trial Clause.
>
> "A defendant may be disentitled to the speedy trial safeguard in the case of a delay for which he has, or shares, responsibility. It has been held, for example, that an accused cannot sustain a speedy trial claim when delay results from * * * making dilatory pleadings or motions * * *." *Dickey v. Florida,* 398 US at 47-48.

In *In Re Sawyer's Petition,* 229 F2d 805 (7th Cir), *cert den* 351 US 966 (1956), where the defense alleged a denial of a speedy trial under the Sixth Amendment, part of the delay in bringing the defendant to trial in the state court had been occasioned by waiting for the decision in an appeal of a companion case based on the same facts and same indictment. That appeal had challenged the lawfulness of the assembling

of the grand jury which indicted both defendants. The court said:

"* * * It was only reasonable for the state to wait until the validity of the grand jury's action had been determined * * *." 229 F2d at 812.

The similarity of *In Re Sawyer* to the case at bar is obvious.

In a Note entitled, "The Right to a Speedy Trial" in 20 Stan L Rev 476 at 480 (1968), the author states:

"* * * A delay may not violate the right to a speedy trial unless the cause is improper *and* the defendant suffers actual prejudice.

"* * * A defendant cannot complain of delays attributable to himself, such as delays resulting from his pretrial motions * * *. Nor, as a general rule, can he complain of delays resulting from such things as court procedures * * *."

See also Note, 51 Va L Rev 1587, 1598 (1966), and *United States v. Ewell*, 383 US 116, 86 S Ct 773, 15 L Ed 2d 627 (1966).

■ We conclude that the delay occasioned by this appeal, authorized under ORS 138.060(4), is not unduly long, or a delay which is prohibited by either the state or federal constitutions. Accordingly, the trial court properly overruled the motion to proceed immediately to trial or dismiss the indictment and its judgment is in that respect affirmed.

Affirmed in part; reversed in part.