Argued and submitted June 3, affirmed October 6, reconsideration denied
December 15, 1993, petition for review pending 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# LAWRENCE WILLIAM MOYLETT,
*Appellant.*

## (D890539M; CA A77510)

860 P2d 886

William Uhle, Portland, argued the cause for appellant. With him on the brief was Thuemmel & Uhle, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

Rossman, P. J., dissenting.

## LEESON, J.

Defendant appeals his convictions for assault in the fourth degree and criminal mischief in the second degree. ORS 163.160; ORS 164.354. The issue is whether the trial court erred by denying defendant's motion to dismiss the charges for lack of a speedy trial. We hold that it did not.

The underlying facts are not in dispute, and are fully explained in *State v. Moylett*, 101 Or App 86, 789 P2d 677 (1990). For convenience, we briefly review them. On December 23, 1988, defendant, a sheriff's detective, drove his car after drinking alcohol at an office party. He collided with another car, injuring himself and another person. He was taken to a hospital. Defendant refused to consent to giving a blood sample for a blood alcohol test. Nonetheless, an investigating officer asked hospital personnel to draw a sample, which they did. The officer then obtained a warrant to search defendant's blood for alcohol. Pursuant to that warrant, two subsequent blood samples were taken at one hour intervals from the first sample.

On February 14, 1989, defendant was charged with assault, criminal mischief and driving under the influence of intoxicants (DUII). Trial was set for April 20, 1989. On April 4, defendant moved to suppress evidence of the three blood samples. He argued that the first sample was taken without a warrant, probable cause or exigent circumstances, and that the warrant purporting to authorize the second and third samples was not supported by probable cause. The trial court granted the motion to suppress in its entirety, and the state appealed.

In an opinion issued March 28, 1990, we affirmed the suppression of the first blood sample, and reversed the trial court's suppression of the second and third blood samples. *State v. Moylett, supra*, 101 Or App at 91. Both the state and defendant petitioned the Supreme Court for review. It granted review, and issued its opinion on July 16, 1992. *State v. Moylett*, 313 Or 540, 836 P2d 1329 (1992). The court held that, with regard to the DUII charge, all three blood samples should be suppressed. 313 Or at 547. With regard to the assault and criminal mischief charges, it held that the first sample should be suppressed, 313 Or at 551, but that the

second and third samples were admissible. 313 Or at 552. The case was remanded to the trial court.

Trial was scheduled for November 6, 1992. On September 29, 1992, defendant filed a motion to dismiss for lack of speedy trial. The trial court denied that motion. Its written order stated, in relevant part:

"10.  That despite a delay of almost 46 1/2 months since the date of the alleged incident, *the defendant has not suffered any actual prejudice* such as the destruction of evidence or the disappearance of a witness;

"11.  That the defendant has not been held in custody at any time in regards to the case at bar;

"12.  That it is apparent that the defendant is emotionally stressed. It is similarly apparent that the defendant has been severely impacted [*sic*] as a result of the charges pending against him. Not all of the defendant's anxiety, however, is attributable to the defendant's pending criminal case.

"Based on the above findings, the Court makes the following conclusions of law:

"1.  That while a delay of almost 46 1/2 months is on its face extreme, most of the delay in this case was the result of pre-trial appeals. It has been recognized by the appellate court's [*sic*] in this state that pre-trial appeal is the most benign basis for delay;

"2.  That more than one-half of the delay, approximately 26 months, was the result of the case being on appeal to the State Supreme Court. Since both the defendant and the State requested review, this period cannot be attributed to either side;

"3.  That one-quarter of the delay, approximately 10 months, was caused by the State's appeal of the trial court's pre-trial suppression of evidence. This delay is attributable to the State. As noted above, pre-trial appeal is the most benign basis for delay. The State's appeal was well founded, as evidenced by the fact that the State was successful in large measure. Further, there is no evidence that the State's appeal was pursued for purposes of delay or to obtain an unfair advantage;

"4.  That the remaining period of delay * * * is not an impermissible period considering the nature of the

charges and the complexity of the issues involved in this case." (Emphasis supplied.)

Defendant was convicted of assault and criminal mischief.

■ Defendant contends that his motion to dismiss should have been granted pursuant to ORS 135.747,[1] Article I, section 10, of the Oregon Constitution,[2] and the Sixth Amendment to the United States Constitution.[3]

■ The analysis of whether a trial delay requires dismissal is the same under ORS 135.747 and under the Oregon Constitution. *State v. Emery*, 115 Or App 655, 840 P2d 95 (1992), *mod* 117 Or App 565, 842 P2d 467, *rev allowed* 317 Or 396 (1993). We consider three factors in determining whether there has been a violation of a defendant's right to a speedy trial: (1) the length of the delay; (2) the reasons for the delay; and (3) the prejudice to the defendant. *State v. Dykast*, 300 Or 368, 377, 712 P2d 79 (1985). A substantially longer than average delay is required to trigger an inquiry into the other two factors. *State v. Emery, supra*, 115 Or App at 657. In this case, the delay of almost 45 months is more than enough to trigger such an inquiry.

The bulk of the delay involved resolution of defendant's pretrial motion to suppress. The state was entitled to appeal the trial court's order granting that motion, ORS 138.060(3), and it did. Following our decision, both parties petitioned the Supreme Court for review. It granted review, and issued an opinion. Resolution of defendant's pretrial motion, at the trial court and at both levels of appeal, accounts for all but six months of the delay in this case.

---

[1] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

[2] Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay * * *."

[3] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

Defendant contends, nonetheless, that the state is responsible for the delay resulting from the appellate process. He does not argue that the state's appeal or petition for review was frivolous or filed in bad faith. He maintains, instead, that the judiciary failed to expeditiously process the case on appeal. He characterizes this case as involving "misdemeanor charges that could have been disposed of much faster than a felony."

We noted in *State v. Meikle*, 44 Or App 91, 95, 605 P2d 301 (1980), that

"a court is not an adversary to a defendant and a delay by the court is not necessarily for purposes [that] are adverse to defendant's interest. The judicial task is to impartially, fairly and expeditiously resolve the dispute between the parties. Moreover, the judiciary's responsibility to safeguard the rights of the parties at times may of necessity override the * * * expeditious administration of justice. Consideration of a court's attention to this responsibility must be taken into account when assessing the weight to be given the reason for the delay." (Citation omitted.)

The delay defendant complains of was caused by the judiciary carrying out its responsibility to safeguard his right to have improperly obtained evidence suppressed.

We do not, and cannot, know why defendant's case was before the Supreme Court for more than two years. We do know that, even though the case involved misdemeanor charges, the Supreme Court found that it raised "important issues." *State v. Moylett, supra*, 313 Or at 545. A concurring opinion found one issue in the case "very close" and "troubling." 313 Or at 553. We are in no position to say that the Supreme Court's extended consideration of the merits of defendant's motion to suppress unreasonably delayed his trial. The workings of the appellate process to resolve defendant's pretrial motion constitute a valid explanation for the delay in this case. As in *State v. Meikle, supra*, "the reason for the delay does not benefit" defendant's argument that he was denied a speedy trial. 44 Or App at 95.

We turn to the third factor to be considered, prejudice to defendant. Three types of prejudice are relevant in the

context of speedy trial claims: (1) oppressive pretrial incarceration; (2) impairment of the ability to defend; and (3) anxiety. *State v. Dykast, supra,* 300 Or at 378.

The trial court found that defendant suffered no actual prejudice, because he was never incarcerated and the delay did not cause him to lose evidence or in any other way affect his ability to defend against the charges. In *State v. Mende,* 304 Or 18, 23, 741 P2d 496 (1987), the Supreme Court noted that "our prior cases all have required in effect that there be some degree of actual prejudice to the ability to prepare a defense to the charge in order to establish a constitutional violation of sufficient magnitude to justify dismissal of the criminal charge."

The only prejudice defendant alleges is that he suffered anxiety. It is the nature of a criminal prosecution to cause "stress, discomfort and interference with a normal life. Delay adds to the problem." *State v. Dykast, supra,* 300 Or at 378. As the court implied in *Dykast,* no small part of the anxiety that a criminal defendant is likely to feel is simply the result of being charged with a crime, irrespective of any delay. In this case, although the trial court found that defendant was "emotionally stressed," it also found that not all of his anxiety was attributable to the pending criminal case.

Although there was a long delay in bringing defendant to trial, we agree with the trial court that a "pretrial appeal [relating to defendant's motion to suppress] is the most benign basis for delay."[4] Defendant was never incarcerated, and was not prejudiced by the delay in his ability to defend the case. Whatever anxiety defendant experienced that was attributable to the trial delay must be viewed in light of the reason for that delay — resolution of defendant's pretrial motion to suppress.

Considering all of the relevant factors, we hold that the trial court did not err in denying defendant's motion to dismiss.

---

[4] In *State v. Robinson,* 3 Or App 200, 214, 473 P2d 152 (1970), we cited favorably a note in the *Stanford Law Review:* " 'A defendant cannot complain of delays attributable to himself, such as delays resulting from his pretrial motions.' "

Defendant's federal claim fails for the same reasons. *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972).

Affirmed.

**ROSSMAN, P. J.,** dissenting.

I have grave reservations about whether a state criminal justice system can endure when it takes almost four years for it to process a misdemeanor case. I am especially concerned when an appellate court takes more than two years to decide such a case and the state is not required to provide any explanation whatsoever as to the validity and reasonableness of such a delay. I fear that the majority — in holding that the appellate-caused delay in this case does not violate the guarantee that "justice shall be administered * * * without delay," Or Const, Art I, § 10, — has effectively created a *per se* rule that stops the clock whenever a case finds its way into an appellate court. I strongly believe that this renders an accused's right to a speedy trial meaningless. Accordingly, I must respectfully dissent.

The majority's holding hinges on the fact that the pretrial delay in this case was occasioned by "the workings of the appellate process." 123 Or App at 605. It makes one factor — the reason for the delay — dispositive, and gives little attention to the length of the delay and the prejudice[1] to

---

[1] I appreciate that the trial court's written findings include the statement that defendant "has not suffered any actual prejudice." However, statements made by the judge in open court clarify that, although defendant did not suffer the "actual" prejudice that is found when one is incarcerated or one's defense is impaired by the delay, he did suffer from acute anxiety, which, as the majority acknowledges, is a viable basis for a finding of prejudice. *State v. Dykast*, 300 Or 368, 712 P2d 79 (1985). The trial court stated that the delay in this case was "on its face extreme," "unreasonable" and "severely impacted defendant's ability to perform at work and at home." It said, *"that would be sufficient prejudice, I think,"* but then concluded that the constitution could not have been violated, because the *reason* for the delay in this case was "benign." There is evidence to support the court's oral finding of anxiety-based prejudice, and its written finding of no "actual" prejudice does not detract from that. In short, I believe that the prejudice factor is a "given" in this case. Indeed, the state's arguments on appeal reveal the parties' understanding that defendant suffered "personal prejudice" as a result of his anxiety; the state argues only that that prejudice should not warrant dismissal where "a valid reason exists for the State's failure to bring [defendant] to trial[.]" As a final comment, nothing in the *dicta* of *State v. Mende*, 304 Or 18, 741 P2d 496 (1987), on which the majority relies, changes the rule that anxiety-based or "personal" prejudice can be a viable basis for

defendant. Moreover, in its analysis of that one factor, I believe that the majority loses sight of both the letter and the spirit of Article I, section 10. No doubt in the future this case will be cited for the proposition that, when pretrial delay is the result of an appeal, such delay does not violate one's right to a speedy trial, because the time required to resolve an appeal is "a valid explanation" for any length of delay. Yet that cannot be what the framers of our constitution intended, and it should not be the rule in this state. Given that Article I, section 10, requires that justice "shall be" administered without delay, and given that that charge is directed at those of us who administer justice, *the timeliness of judicial action cannot logically be exempt from our consideration of whether justice was delayed.* Did not Article I, section 10, seek to ensure that, among other things, judges were constrained from endlessly delaying judicial proceedings? Can that provision be given effect if judges — at least appellate judges — need not heed its call? Indeed, the majority adds insult to injury by creating a double standard within the judiciary. Had the delay in this case been caused by a trial judge, there can be little doubt that, on appeal, defendant's case would have been dismissed in a heartbeat. But because the delay was caused by appellate judges, no time constraints are deemed to apply. By exempting the appellate courts from a consideration of whether justice has been delayed, the majority creates a system in which scandalously long delays may go unchecked.

As Judge Jones urged in his concurrence to *State v. Dykast*, 300 Or 368, 379, 712 P2d 79 (1985):

> "To secure the rights of all the citizens of this state as well as the rights of defendants in criminal cases, the courts in this state should adopt standards as recommended by the American Bar Association, National Conference of State Trial Judges, Standards Relating to Court Delay Reduction 12, § 2.52 (1984), as follows:
>
> "'* * * * *
>
> " 'MISDEMEANOR—90% of all misdemeanors, infractions and other nonfelony cases should be adjudicated or otherwise concluded within 30 days from the date of arrest or citation and 100% within 90 days.' "

---

dismissing criminal charges. Even the state concedes that personal prejudice, although a "less serious form of prejudice," is "not to be discounted entirely."

I strongly believe that the concept of timeliness must apply to all courts, not just trial courts. We are all part of the same judicial branch of state government, and as a governing body of the state, we are subject to the same constraints of our constitution.

I recognize that the position I am espousing has a very strong potential for affecting this court, especially in light of the fact that the number of our criminal appeals has increased 67 percent in the past decade, while the number of judges on our court has remained constant. We face a true dilemma in handling ever-expanding caseloads with the same number of judges that we have had since 1977. Whether it is through creating more judgeships or enacting legislation that will significantly limit nonmeritorious appeals, *something must be done* to bring our system of judicial administration into compliance with the constitutional mandate that justice be administered "without delay."[2]

I wish to make it clear that we need not, and should not, embark on an exercise of fault-finding. We must simply acknowledge that we cannot maintain and should not tolerate a criminal justice system that moves at such a sluggardly pace. That is especially true where, as here, the state has failed to explain why a two-year appellate delay should be deemed reasonable. In fact, the state conceded in oral argument that the record in this case contains *nothing* that would establish the reasonableness of the Supreme Court's delay in rendering an opinion. When the state fails to tender any such explanation, we should not take it upon ourselves to invent one.

I dissent.

---

[2] Obviously, certain cases take more time to resolve at the appellate level than do others, and because of substantial backlogs, many cases simply must "await their turn" before they are given any consideration at all.

It should be noted that in August, 1993, the Oregon Supreme Court became current with its caseload—an extraordinary feat indeed. Notwithstanding those laudable efforts, however, we are still faced with the fact that the present case was under the advisement of that court for more than two years.