Argued and submitted October 31, 2002, reversed and remanded for trial
February 12, 2003

## STATE OF OREGON,
*Appellant,*

*v.*

## JERRY FLEETWOOD,
*Respondent.*

### CR92-167; A116403

63 P3d 42

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Robin A. Jones, Senior Deputy Public Defender, argued the cause for respondent. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals from the trial court's order dismissing with prejudice an indictment that charged defendant with distribution of a controlled substance, ORS 475.992, on the ground that pretrial delay violated defendant's rights under Article I, section 10, of the Oregon Constitution. In particular, the court determined that the total delay of nearly nine years, including over eight years devoted to the appeal of the trial court's suppression of evidence obtained though the use of a body wire, *State v. Fleetwood*, 127 Or App 558, 872 P2d 998 (1994), *rev'd and rem'd*, 331 Or 511, 16 P3d 503 (2000) (*Fleetwood I*), when coupled with the personal anxiety defendant experienced during that time, compelled dismissal. As explained below, we conclude that, in the totality of the circumstances, the length of the pretrial delay, the reasons for that delay, and the nature and magnitude of the prejudice to defendant do not warrant dismissal under the speedy trial provisions of the Oregon Constitution. We further reject defendant's alternative arguments under ORS 135.747 and the Sixth Amendment to the United States Constitution. Accordingly, we reverse and remand for trial.

The material facts are undisputed. On June 18, 1992, a grand jury returned a one-count indictment against defendant for the felony offense of unlawful delivery of marijuana, a Schedule I controlled substance. ORS 475.992. Approximately three months later, on September 24, defendant moved to suppress the evidence of all communications obtained through the use of a body wire, arguing that the communications were obtained in violation of his statutory and constitutional rights.

The trial court granted defendant's motion to suppress on November 24, 1992, holding that use of the body wire was a search under Article I, section 9, of the Oregon Constitution, and that the search was unlawful because it was conducted without a warrant and no exception to the warrant requirement applied. The state filed a notice of appeal from the trial court's suppression order on December 8, 1992. On February 18, 1993, the state moved to hold the case in abeyance pending our disposition of a related group of

cases. That motion was granted, and the case was held in abeyance for approximately seven months.

In August 1993, in a related case, *State v. Casteel*, 122 Or App 218, 857 P2d 204 (1993), we held that, under the applicable statute, body wire evidence was admissible—even in the absence of an *ex parte* order—so long as the officer had probable cause to believe that the conversation would involve an unlawful drug transaction. On February 9, 1994, we issued *State v. Bass*, 126 Or App 303, 868 P2d 761 (1994), *vac'd and rem'd*, 331 Or 693, 21 P3d 1086 (2001), in which we held that police interception of communications through use of a body wire does not violate Article I, section 9, of the Oregon Constitution. On April 20, 1994, after reactivating the appeal, we reversed and remanded, citing *Bass*. *Fleetwood I*, 127 Or App at 558. Thus, the total time between the filing of the notice of appeal and the Court of Appeals' disposition was slightly more than 16 months.

Defendant filed a petition for review on May 17, 1994, and the Supreme Court accepted review on June 21, 1994. Defendant requested and was granted four extensions of time in which to file his brief; the state requested and was granted two such extensions. No objections were raised to any of those requests. Defendant ultimately filed his brief on October 11, 1994. The state filed its brief on January 10, 1995, and oral argument was heard on March 9, 1995.

On December 6, 1996, the Supreme Court issued a letter to the parties, directing them to brief issues raised by the passage of Ballot Measure 40, the omnibus "crime victims' rights" initiative that had been approved by the voters in the 1996 general election. Among other things, section two of Measure 40 proposed to amend the state constitution in such a way as to render the search and seizure protections of the Oregon Constitution coextensive with the protections afforded by the federal constitution.[1]

---

[1] The most obvious implication of that provision, as potentially applicable in *Fleetwood I*, was that, although the Oregon Supreme Court had not yet addressed whether the nonwarranted use of body wires violated Article I, section 9, of the Oregon Constitution, a plurality of the United States Supreme Court had held that such use of body wires did not offend the United States Constitution. *United States v. White*, 401 US 745, 91 S Ct 1122, 28 L Ed 2d 453 (1971).

The parties submitted extensive briefing on several issues, including Measure 40's constitutionality, whether it applied to pending appeals, whether retroactive application was constitutional, and whether, and to what extent, it affected the disposition of defendant's appeal. Specifically, after obtaining a three-day extension, the state filed a brief responding to the Supreme Court's request on December 23, 1996. After obtaining a seven-day extension, defendant filed his brief on January 30, 1997. On February 26, 1997, after receiving a five-day extension, the state filed a reply brief. The court also accepted *amicus curiae* briefs from the American Civil Liberties Union of Oregon and the Oregon Criminal Defense Lawyers' Association.

On March 3, 1997, the court heard oral argument on the issues raised by Measure 40. Then, on March 24, 1997, after obtaining a two-day extension, defendant filed a supplemental brief. On November 5, 1997, defendant filed a memorandum of additional authorities. In sum, the passage of Measure 40 raised and interjected novel and complex issues into *Fleetwood I* that were not presented in the initial briefing and argument to the Supreme Court.

The timeliness of the disposition of this case was also affected by changes in the composition of the Supreme Court during the pendency of defendant's appeal. Justice Unis retired in June 1996, and, in January 1997, his seat was filled by Justice Kulongoski. Justices Leeson and Riggs replaced Justice Fadeley, who retired in January 1998, and Justice Graber, who resigned in March 1998. On June 11, 1998, the Supreme Court, by order, deemed the case resubmitted.

On December 29, 2000, the Supreme Court issued its decision.[2] The court held that ORS 133.724 requires the state to obtain an *ex parte* court order before intercepting oral communications; consequently, because the body wire evidence

---

[2] In the interim, the court had addressed the constitutionality of Ballot Measure 40 in *Armatta v. Kitzhaber*, 327 Or 250, 959 P2d 49 (1998) (holding Ballot Measure 40 unconstitutional as enacted in violation of the "separate-vote" requirement of Article XVII, section 1, of the Oregon Constitution).

Moreover, although *Fleetwood I* was resubmitted to the court in June 1998, none of the three justices who joined the court after the case was first argued participated in its consideration.

was obtained without a court order and without any applicable exception to the warrant requirement, it was properly suppressed. *Fleetwood I*, 331 Or at 529-30. Thus, the court reversed our decision, affirmed the order of the circuit court suppressing the body wire evidence—albeit on statutory, not constitutional, grounds—and remanded to the circuit court for further proceedings. *Id.* at 530.

On February 2, 2001, the state filed a petition for reconsideration. The Supreme Court denied that petition on March 20, 2001. The appellate judgment, remanding the case to the circuit court, was issued on March 27, 2001. Thus, the total time between the filing of the petition for Supreme Court review and the issuance of the appellate judgment was approximately 6 years and 10 months.

On April 30, 2001, defendant filed a motion in the trial court seeking the dismissal of the indictment. Defendant argued that the nearly nine-year delay between June 18, 1992, the date of his indictment, and May 7, 2001, the date on which proceedings were scheduled to resume in the circuit court, violated his right to a speedy disposition of his case under ORS 135.747, under Article I, section 10, of the Oregon Constitution, and under the Sixth Amendment to the United States Constitution.

On September 19, 2001, the trial court issued a letter opinion in which it granted defendant's motion to dismiss the indictment. In that opinion, the trial court first rejected defendant's statutory claim, finding that defendant had implicitly consented to the delay when he filed a motion that "requires pre-trial resolution." In analyzing whether the nearly nine-year period was "reasonable delay" for purposes of the statute, and after concluding that the resolution of defendant's motions before the trial court had involved "reasonable amounts of time to study the legal questions and render decisions," the trial court addressed the time spent in the appellate process:

> "The state called a witness, Mr. [James] Nass, to explain the reasons for the delay before the Court of Appeals and Supreme Court. Mr. Nass is legal counsel to the appellate courts. The State also provided data from the Oregon Judicial Information Network which shows the progress of the

matter before those courts. Most of the delay was before the Supreme Court. Some of it is explained by requests for extensions of time filed by both the state and the defense, by the resignation and retirement of justices of the court, and by other routine matters of appellate procedure. The rest of the delay before that court is a little over three years. Although that length of time might appear excessive on the surface, it is evidently explained as the normal workings of the appellate process. The workings of the appellate process to resolve a pre-trial motion constitute a valid explanation for delay under ORS 135.747. Therefore the delay is reasonable for purposes of ORS 135.747."

(Footnote omitted.)

The trial court then addressed defendant's state constitutional argument under Article I, section 10. The court first noted that, when considered under the proper approach to analyzing such claims, the almost nine-year delay was "substantially greater than the average time to bring a defendant to trial," and, thus, it was necessary to inquire into the reason for the delay and the prejudice to defendant. Because the delay in this case, while "largely attributed to the state," was not instigated in order "to gain an advantage over Mr. Fleetwood," the court held that the reason for the delay did not weigh heavily in favor of dismissing the charge.

The court then addressed defendant's claim of prejudice, concluding that the stress and anxiety caused by the delay was sufficient to merit dismissal:

"Generally, there are three potential types of prejudice in the context of a speedy trial claim under Article I, section 10: excessive pre-trial detention, impairment of the defense, and the defendant's anxiety and concern. A defendant who makes a speedy trial claim has the burden to establish prejudice. In the present case, the only prejudice claimed by Mr. Fleetwood is the anxiety and concern he has suffered for the past nine years. Anxiety is prejudicial in the constitutional sense when the defendant is aware of the charge and, as a result, is forced to endure the anxiety and stigma of an unresolved public accusation for an unreasonable period of time.

"* * * According to Mr. Fleetwood's affidavit, the delay caused him to suffer depression, placed stress on his marriage, denied him training and employment opportunities, the opportunity to move and to travel. According to Mr. Fleetwood's probation officer's affidavit, Mr. Fleetwood was on probation and involved in court proceedings and criminal activity much of the time. I accept the truthfulness of Mr. Fleetwood's affidavit. The anxiety he describes is beyond mere distraction or inconvenience. It substantially interfered with his life. It would probably be insufficient to justify dismissing the charge against him if the delay in this case lasted for a relatively short time. Given a nine year delay, however, I conclude that the stress and anxiety inflicted on Mr. Fleetwood violated Article I, section 10. If a constitutional guarantee to a speedy trial means anything, it means that a defendant who does not himself avoid or delay a trial will not have to wait nine years for a trial in which his only request is that the evidence against him be evidence the state is entitled to use."[3]

(Footnotes omitted.) Having determined that defendant was entitled to dismissal of his indictment under Article I, section 10, the trial court found it unnecessary to address his Sixth Amendment claim. The court entered its judgment of dismissal on October 12, 2001.

On appeal, the state argues that the dismissal was erroneous for several reasons, including (1) the time expended in the initial appeal to this court was justified and does not militate in favor of dismissal, because the state's position on appeal was meritorious, as evidenced by our holding, and our disposition was reasonably expeditious; (2) the time expended in the proceedings before the Supreme Court should not count against the state because defendant initiated those proceedings by filing the petition for review; and (3) because defendant was not incarcerated pending trial,

---

[3] During the hearing addressing defendant's speedy trial claim, the trial court remarked that, although it would not decide the case based on its "personal predilections," it considered the delay "so extraordinary," and "so out of keeping with anything that I have ever seen in terms of how long it has taken * * * that it is difficult for me to imagine the case should not be dismissed." In its letter opinion, however, the court noted that although a delay of nine years was "probably adequate" to create a presumption of prejudice, it was "unnecessary to apply the presumption in this case * * * as I conclude that Mr. Fleetwood met the burden of proving actual prejudice."

and cannot identify any actual prejudice to his ability to present a defense, his personal anxiety, although cognizable, is so minimal that it does not justify dismissal with prejudice.

Defendant counters, in part, that the time expended in the entire appellate process must be attributed to the state because, but for the state's filing of the initial appeal, defendant would never have had to seek review—and the merit of defendant's (and the trial court's) position was ultimately confirmed by the Supreme Court's holding.[4] Defendant also cross-assigns error to the trial court's rejection of his statutory claim and, further, reiterates his federal constitutional claim as an alternative basis for affirmance.

■ We begin by considering the propriety of the trial court's dismissal under Article I, section 10, of the Oregon Constitution.[5] *See State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000) (explaining that it is appropriate to deviate from the usual practice of addressing statutory claims first where a successful constitutional claim would result in more complete relief of dismissal with prejudice). In *State v. Vasquez*, 177 Or App 477, 485-86, 34 P3d 1188 (2001), *rev allowed*, 334 Or 190 (2002), we summarized our approach to speedy trial analysis under Article I, section 10:

> "First, the court must consider the length and cause of the delay. If the delay, under the circumstances, is so long that it is 'manifestly excessive' so as to 'shock the imagination and the conscience,' then the court must dismiss the charges against the defendant without further inquiry.

---

[4] As we explored at oral argument, the parties' positions as to who was responsible for time expended on some, or all, of the appeal can assume a "She hit me"/ "No, he hit me first" quality. In response to defendant's arguments, the state asserted that it would never have had to file the original appeal but for defendant filing his motion to suppress. Defendant countered that he would not have had to seek suppression if the police had acted lawfully. And so on.

As described below, that sort of "finger-pointing" exercise is futile and immaterial. *See* 186 Or App at 315-16 & n 6. Rather, ultimately, we must determine whether any *state actor*—the prosecutor *or the courts*—was unreasonably dilatory in the prosecution or disposition of the interlocutory appeal. That is so regardless of which party "caused" the appeal or subsequent review by another appellate court.

[5] Article I, section 10, provides: "No court shall be secret, *but justice shall be administered*, openly and without purchase, completely and *without delay*, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." (Emphasis added.)

> Similarly, if the delay was purposefully caused by the state to hamper the defense, further inquiry is again unnecessary. Barring either of those extreme circumstances, however, it is essential that the court assess all of the relevant considerations—length of delay, reasons for delay, and prejudice to the defendant—to determine if the circumstances warrant dismissal under Article I, section 10."

(Citations omitted; footnote omitted.)

Neither of the "extreme circumstances" identified in *Vasquez* and related cases is present here. Defendant does not—and could not credibly—contend that the state's prosecution of the appeal or any action by the appellate courts was purposefully undertaken to "hamper the defense."

Nor was the total time expended, nearly nine years, so "manifestly excessive" as to compel dismissal without any consideration of the justifications for delay or the prejudice, if any, to defendant. Although the total time expended on the interlocutory appeal was much greater than average, the "manifestly excessive" inquiry turns on "the nature of the crime charged" and "the period, if any, of the defendant's pretrial incarceration[.]" *Vasquez*, 177 Or App at 486. Here, defendant was charged with a serious drug crime, a Class B felony, ORS 475.992(2)(a), and he was not incarcerated pending trial. Given the totality of the circumstances, the pretrial delay does not "shock the imagination and the conscience," requiring dismissal without further inquiry. *See, e.g., Harberts*, 331 Or at 89 (notwithstanding the defendant's pretrial incarceration, pretrial delay of five years in aggravated murder case was "not so manifestly excessive that we may ignore the other factors"); *State v. Harman*, 179 Or App 611, 615, 40 P3d 1079 (2002) (where the defendant was charged with driving under the influence of intoxicants and was not incarcerated pending trial, five-year, seven-month delay was not "so shockingly long"); *Vasquez*, 177 Or App at 487 (roughly 11-year delay in murder case where the defendant was incarcerated out-of-state on other criminal convictions held to be "insufficient, by itself, to require dismissal"); *State v. Rohlfing*, 155 Or App 127, 963 P2d 87 (1998) (eight-year delay in burglary case implicitly deemed not "manifestly excessive").

Nevertheless, we conclude, as the state concedes, that the nearly nine-year period between the date of defendant's indictment and defendant's motion to dismiss is more than sufficient to require inquiry into the remaining factors—the reasons for the delay and prejudice to the defendant. *State v. Mende*, 304 Or 18, 23-24, 741 P2d 496 (1987) (delay substantially greater than the average compels inquiry into the remaining two factors). Accordingly, we turn next to the reasons for the delay.

The state argues that, of the nearly nine-year delay, it was only directly responsible for the 17-month period between the circuit court's suppression order and the reversal of that order on appeal before our court. That 17-month period was, according to the state, "relatively brief and not of constitutional significance." The state further asserts that, because the overwhelming majority of the delay—the six years and seven months that the case remained pending before the Supreme Court—resulted from defendant's petition for review, "none of the delay in that court can be attributed to the state *qua* prosecutor."

The state's argument assumes a false premise. The state assumes that only the delay attributed to the "state *qua* prosecutor" can militate in favor of a speedy trial dismissal. That is incorrect. Rather, as the court reiterated in *Harberts*, the constitutional "command * * * that justice shall be administered without delay * * * is addressed to the prosecution *and to the court*." 331 Or at 83 (internal quotation marks omitted; emphasis added).[6] *See also State v. Hampton*,

---

[6] In *Harberts*, the court noted with approval the United States Supreme Court's approach to weighting delay described in *Barker v. Wingo*, 407 US 514, 92 S Ct 2182, 33 L Ed 2d 101 (1972):

"With respect to the reasons for the delay, the *Barker* court held that different weights should be assigned to different reasons. For example, a deliberate attempt by the government to delay a trial to hamper the defense weighs heavily against the government, while neutral reasons weigh less heavily. *However even neutral reasons for delay must be weighed against the government, because 'the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'*"

331 Or at 84 (citations omitted; footnote omitted; emphasis added).

One of the examples the *Barker* Court gave of "neutral delay" was delay resulting from "overcrowded courts." 407 US at 531. By extension, unreasonable delays in an appellate court's disposition of an interlocutory appeal are also properly

152 Or App 742, 954 P2d 1267 (1998) (the defendant was entitled to speedy trial dismissal under ORS 135.747 where the trial court's 19-month delay in ruling on the defendant's motion to suppress, was, by the trial court's own admission, unreasonable). Thus, unreasonable delay by an appellate court in disposing of an interlocutory appeal militates in favor of dismissal even if the "state *qua* prosecutor" had no control over such delay. With that threshold principle fixed, we turn to assessing the justification for time expended at various stages of the pretrial appellate processes.

We first note that the two months that the trial court expended in disposing of defendant's motion to suppress was reasonable. Defendant does not contend otherwise.

The 17 months expended between the trial court's suppression ruling and this court's decision in *Fleetwood I* was likewise reasonable. That is so for two reasons. First, as evinced by our disposition of the appeal, the state's substantive challenge to the trial court's suppression order was reasonably—albeit not ultimately—meritorious. *See generally Harberts*, 331 Or at 90 (concluding that the state's first appeal from the trial court's suppression order, although having taken four years to resolve, was "consistent with the state's constitutional duty to exercise reasonable diligence in bringing defendant to trial"). Second, the length of time expended was consonant with a reasonable, diligent disposition of the case—particularly given the complexity and importance of the issues raised. Again, defendant does not contend otherwise. Consequently, the time expended in the appeal to the Court of Appeals was completely justified. As such, that time does not qualify as even "neutral delay" and does not militate in favor of dismissal.

We next consider the time (six years and seven months) devoted to the Supreme Court review process, and particularly address each stage of that process. Defendant does not dispute the reasonableness of the time expended between defendant's filing of his petition for review and the acceptance of review (one month) or of the time from acceptance of review to the initial oral argument in March 1995 (an

weighted as "neutral delay"—as militating to some degree in defendant's favor—in the constitutional speedy trial analysis.

additional nine months). Thus, our inquiry focuses on the remaining period of five years, nine months until the Supreme Court issued its decision on December 29, 2000.

As we recounted earlier, on December 6, 1996, the Supreme Court directed the parties to submit additional and extensive briefing on the issues raised by the passage of Ballot Measure 40. We do not understand defendant to contend that the court acted unreasonably in taking that step. Nor could defendant plausibly so argue, given Measure 40's potentially dispositive impact with respect to the state constitutional arguments raised in *Fleetwood I*. *See* 186 Or App at 308 n 1. Further, we do not understand defendant to argue that the additional time allowed for briefing of those complex issues and for a second round of oral argument was unreasonable in the totality of the circumstances.

Further delaying disposition of this case were the changes in the composition of the Supreme Court during the pendency of defendant's appeal. As noted earlier, Justice Unis retired in June 1996, and, in January 1997, his seat was filled by Justice Kulongoski. Justices Leeson and Riggs replaced Justice Fadeley, who retired in January 1998, and Justice Graber, who resigned in March 1998. The case was then resubmitted to the court on June 11, 1998.

The complexity of the issues raised by the appeal and the changes in the composition of the court are precisely the types of circumstances that must be considered when assessing the length of the delay for speedy trial purposes. *See State v. Moylett*, 123 Or App 600, 602-03, 860 P2d 886 (1993), *rev den*, 319 Or 150 (1994). In *Moylett*, the defendant, who was convicted of assault in the fourth degree and criminal mischief in the second degree, appealed, assigning error to the trial court's denial of his motion to dismiss for lack of speedy trial. In that case, as here, the defendant moved successfully to suppress evidence. On the state's appeal, we affirmed in part and reversed in part. *State v. Moylett*, 101 Or App 86, 789 P2d 677 (1990), *aff'd in part and rev'd in part*, 313 Or 540, 836 P2d 1329 (1992). The appeal to the Court of Appeals expended about 11 months. Both the state and the defendant petitioned for Supreme Court review, and the Supreme Court ultimately affirmed in part and reversed in

part. *State v. Moylett*, 313 Or 540, 836 P2d 1329 (1992). The Supreme Court review process consumed about 27 months. On remand, the trial court denied the defendant's motion to dismiss on speedy trial grounds, which was based largely on appellate delay.

In affirming the trial court's denial, we noted that "the delay defendant complains of was caused by the judiciary carrying out its responsibility to safeguard his right to have improperly obtained evidence suppressed." *Moylett*, 123 Or App at 605. We further noted:

> "We do not, and cannot, know why defendant's case was before the Supreme Court for more than two years. We do know that, even though the case involved misdemeanor charges, the Supreme Court found that it raised 'important issues.' * * * *We are in no position to say that the Supreme Court's extended consideration of the merits of defendant's motion to suppress unreasonably delayed his trial. The workings of the appellate process to resolve defendant's pretrial motion constitute a valid explanation for the delay in this case.* As in *State v. Meikle*, 'the reason for the delay does not benefit' defendant's argument that he was denied a speedy trial."

*Id.* (citations omitted; emphasis added).

*Hampton* is also instructive. There, the trial court granted the defendant's motion to dismiss under ORS 135.747, after the court had unaccountably failed to rule on the defendant's motion to suppress for more than 19 months after taking it under advisement. 152 Or App at 745. In granting dismissal, the trial court candidly acknowledged that the delay "was 'very embarrassing,' that responsibility for the delay in the court's ruling on defendant's motion was the court's alone[,] and that the delay was not intended to benefit the defendant." *Id.* at 744. We affirmed, and, in so ruling, we explicitly distinguished *Moylett* on the ground that, unlike *Moylett*, where the workings of the appellate process constituted a "valid explanation" for the delay, the trial court in *Hampton* acknowledged that there was no justification for the delay. *Id.* at 746.

Here, the six years and seven months devoted to Supreme Court review, coupled with the 17 months between

the trial court's order and our disposition, and the remaining time devoted to motions in the trial court, totals nearly nine years. That is—by any standard—a considerable amount of time. Nevertheless, that delay, particularly including the time expended before the Supreme Court in *Fleetwood I*, was justified as being reasonably "caused by the judiciary carrying out its responsibility to safeguard [the defendant's] right to have improperly obtained evidence suppressed." *Moylett*, 123 Or App at 605. In this case, as in *Moylett*, and in direct contrast to *Hampton*, the extended consideration in the Supreme Court—as complicated by the complexity of the issues raised and the changes both in the law and in the composition of the court during the pendency of defendant's appeal—is justified. In sum, the nearly nine-year delay was both explained and justified, and consequently, does not militate in favor of dismissal.

■      We turn, finally, to the consequent prejudice to defendant. For purposes of Article I, section 10, speedy trial analysis, there are three types of cognizable prejudice: "(1) excessive pretrial detention, (2) anxiety and concern, and (3) impairment of the defense." *Harman*, 179 Or App at 617 (citing *State v. Emery*, 318 Or 460, 473, 869 P2d 859 (1994)). Defendant acknowledges that he was not subjected to pretrial detention, and he does not contend that the delay impaired his ability to present his defense. Rather, defendant relies solely on the second type of prejudice, that of anxiety and concern caused by the delay.

Anxiety and stress are inherent in any criminal prosecution. *See State v. Hadsell*, 129 Or App 171, 177, 878 P2d 444, *rev den*, 320 Or 271 (1994) ("Most criminal prosecutions cause stress, discomfort and interference with a normal life."). It is also true that an increase in the length of the delay will often worsen such anxiety. *See Harman*, 179 Or App at 618 ("[A]nxiety will typically become more burdensome as the length of delay increases."). Here, defendant asserts—and the trial court found—that he suffered prejudice in the form of "substantial stress and anxiety[,] * * * lost opportunities for employment, job training, housing, and travel[,] * * * stress in his personal relationships" and onerous "supervision conditions." Although we necessarily accept

the trial court's findings in that regard, which are substantiated by evidence in the record, we conclude, unlike the trial court, that in the totality of the circumstances, the prejudice to defendant does not warrant dismissal under Article I, section 10. *See, e.g., State v. Dykast,* 300 Or 368, 712 P2d 79 (1985); *Harman,* 179 Or App at 620.

In *Harman,* the defendant appealed from a judgment of conviction for driving under the influence of intoxicants, arguing that the five-year, seven-month delay between his arraignment and trial violated his statutory and constitutional rights to a speedy trial. 179 Or App at 613. We concluded that, although the defendant had demonstrated prejudice in the form of anxiety and stress-related physical symptoms caused by the delay, and that that "weigh[ed] in his favor," the defendant had not made any showing that he had been prejudiced in his ability to prepare a defense. *Id.* at 617-18. We then concluded that, although there were "unjustified" periods of delay and that such delay caused the defendant to suffer anxiety, that prejudice did not warrant dismissal because the "nominal weight of those factors generally will not overcome the absence of either lengthy pretrial incarceration or meaningful prejudice to the defense." *Id.* at 620.

*Dykast* is similar. There, the Supreme Court concluded that, although the defendant had suffered additional anxiety and stress as a result of the nearly 19-month delay between his arrest and trial for two counts of delivery of a controlled substance, that anxiety did not warrant dismissal:

"Most criminal prosecutions cause stress, discomfort and interference with a normal life. Delay adds to the problem. We are not convinced, however, that the defendant's additional anxiety and stress were so great as to require dismissal. We agree with the trial court that, on balance, defendant has not been deprived of his Article I, section 10, right to a 'speedy trial.'"

300 Or at 378. *See also Emery,* 318 Or at 472-74 (holding that, even where the nearly two-year delay in bringing the defendant to trial on a citation for illegal possession of a game animal was unjustified, the anxiety and inconvenience suffered by the defendant was insufficient to require a speedy trial dismissal under Article I, section 10); *Moylett,* 123 Or

App at 606 (concluding that the defendant was not entitled to dismissal on constitutional speedy trial grounds despite a lengthy pretrial delay, as "a 'pretrial appeal [relating to defendant's motion to suppress] is the most benign basis for delay'" and the "[d]efendant was never incarcerated, and was not prejudiced in his ability to defend the case").

Equally instructive is *Harberts*, where the Supreme Court *did* find the requisite prejudice. There, central to the court's determination that the defendant was entitled to dismissal of the underlying aggravated murder charges was the court's conclusion that the defendant had suffered all three species of constitutionally cognizable prejudice: personal "anxiety and concern," prejudice to the defense, and prolonged pretrial incarceration. 313 Or at 98-99. In particular, the court repeatedly emphasized that the defendant had experienced five years of pretrial incarceration, offending "one of the centuries-old principles that undergirds the speedy-trial requirement, namely, the purpose of preventing prolonged incarceration without trial." *Id.* at 93.

Thus, the court's holding in *Harberts* flowed from the convergence of two considerations—that there were periods of *unjustified* delay and that the defendant had suffered all three species of prejudice, including, most prominently, prolonged pretrial incarceration and actual prejudice to the defense. As we summarized in *Harman*:

> "In short, the result in *Harberts* was founded largely on the defendant's lengthy pretrial incarceration and the defendant's proof of a reasonable possibility that the delay prejudiced his defense. Neither of those severe forms of prejudice is present here, nor were they present in *Dykast* and *Emery*. In both *Dykast* and *Emery*, the court did not require dismissal under Article I, section 10, despite some measure of unjustified delay and delay-related anxiety. Thus, the proposition implicit in *Dykast* and *Emery*—and the one that guides our analysis here—is that the absence of either lengthy pretrial incarceration or prejudice to a defendant's defense weighs against concluding that dismissal is required under Article I, section 10."

179 Or App at 620 (citation omitted).

With respect to prejudice, this case is directly analogous to *Harman, Dykast,* and *Emery,* and materially distinguishable from *Harberts.* Moreover, unlike *Harberts,* defendant here made no showing of *unjustified* delay. Consequently, we conclude that, notwithstanding the very substantial length of pretrial delay in this case, because the delay was justified and because defendant neither was incarcerated pending trial nor suffered any actual prejudice to his ability to present his defense, he is not entitled to dismissal under Article I, section 10.

■■ Defendant alternatively asserts that he is entitled to dismissal under the Sixth Amendment to the United States Constitution.[7] The speedy trial analysis under the Sixth Amendment parallels the analysis under Article I, section 10, except that it includes consideration of whether the defendant ever asserted his right to a speedy trial. *Barker,* 407 US at 528-29. In this case, defendant never asserted his right to a speedy trial until he filed his motion upon remand to the trial court on April 30, 2001. Thus, after considering all relevant factors, we reject defendant's federal constitutional claim. *See Harman,* 179 Or App at 621 (denying the defendant's Sixth Amendment speedy trial claim because the defendant failed to assert his right to a speedy trial).

■■ Finally, defendant asserts that, in all events, he is entitled to dismissal without prejudice under ORS 135.747. In that regard, defendant cross-assigns error to the trial court's contrary determination. *See* 186 Or App at 310-11. ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

The focus of the inquiry under ORS 135.747 is "whether defendant occasioned or acquiesced in the delay and whether the length of time that elapsed in bringing the case to trial

---

[7] The Sixth Amendment to the United States Constitution provides, in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

was reasonable." *Hampton*, 152 Or App at 745 (citing *Emery*, 318 Or at 470-71).

On appeal, as at trial, defendant argues that he was responsible for, or acquiesced in, only that portion of delay between September 24, 1992, when he filed his motion to suppress, and November 24, 1992, when the trial court granted his motion. Defendant asserts that the state is "responsible" for the remainder of the nearly nine-year delay, because it filed the original appeal from the trial court's order and that that delay was "manifestly unreasonable."

As noted, 186 Or App at 310, in rejecting defendant's statutory claim, the trial court found that defendant had implicitly consented to the delay when he filed a motion that "requires pre-trial resolution." Further, in analyzing whether the delay was "reasonable delay" for purposes of the statute, and after concluding that the resolution of defendant's motions before the trial court had involved "reasonable amounts of time to study the legal questions and render decisions," the court summarized the testimony of Appellate Legal Counsel James Nass regarding the reasons for the appellate delay:

> "Most of the delay was before the Supreme Court. Some of it is explained by requests for extensions of time filed by both the state and the defense, by the resignation and retirement of justices of the court, and by other routine matters of appellate procedure. The rest of the delay before that court is a little over three years."

The court then concluded:

> "Although that length of time might appear excessive on the surface, it is evidently explained as the normal workings of the appellate process. The workings of the appellate process to resolve a pre-trial motion constitute a valid explanation for delay under ORS 135.747. Therefore the delay is reasonable for purposes of ORS 135.747."

(Footnote omitted.) We concur in the trial court's assessment, as substantiated by Nass's testimony. Accordingly, we conclude that the trial court properly rejected defendant's statutory speedy trial claim.

Reversed and remanded for trial.